STATE EX REL. HENRY J. LINDE, Attorney General, and Enoch Lodge of Perfection A. A. S. R. No. 1, Fargo Council Knights Kadosh A. A. S. R. No. 1, Pelican Chapter of Rose Croix A. A. S. R. No. 1, and Dakota Consistory A. A. S. R. No. 1, Fraternal Corporations known as the Scottish Rite Bodies of Fargo, North Dakota, and H. C. Plumley, Relators, v. FRANK E. PACKARD, George E. Wallace, H. H. Steele, State Tax Commission of the State of North Dakota, and as Members of such State Tax Commission, W. R. Tucker, County Auditor of the County of Cass, and as such County Auditor of the County of Cass, and John Wetz, City Assessor of the City of Fargo, County of Cass, and as such City Assessor.

(L.R.A.1917B, 710, 160 N. W. 150.)

Constitution — state — legislative assembly — taxation — property exempt from — use of schools — religion — cemetery — charitable courts.

1. That portion of § 176 of the state Constitution which provides that "the legislative assembly shall by a general law exempt from taxation property used exclusively for school, religious, cemetery, or charitable purposes," was addressed to the legislature, and not to the courts. Its terms looked forward to, and required, "ulterior action upon the part of the lawmaking branch of the government." (Engstad v. Grand Forks County, 10 N. D. 54.)

Legislature — constitutional powers — enactments — personal property — charitable associations — lodges — chapters — councils — commanderies — consistories — profit — not organized for — exclusive use of — exempt from taxation.

2. The legislature did not exceed its constitutional powers by the enactment of subdivision 9 of § 2078 of the North Dakota Compiled Laws of 1913, which provided for the exemption from taxation of the personal and real property owned by charitable associations known as posts, lodges, chapters, councils, commanderies, consistories, and like organizations and associations not organized

---

NOTE.—The annotation of this case as reported in L.R.A.1917B, 710, is on the effect of fact that property otherwise exempt from taxation is devoted to purposes of a particular society. The cases discussing this question are collected in exhaustive notes in 16 L.R.A.(N.S.) 829, and 26 L.R.A.(N.S.) 696, referred to in the opinion above.

On what is exempt from taxation as charitable institutions, see note in 38 Am. Rep. 300.

for profit, grand or subordinate, and used by them for places of meeting, and to conduct their business and ceremonies; provided, that such property is used exclusively for such charitable purposes.

**Masonic organization — building belonging to — used by — exclusively for meeting and lodge purposes — subordinate masonic bodies — taxation — exempt from.**

3. A building belonging to a Masonic organization, and devoted exclusively to Masonic use, the greater portion of said building being used for the place of meeting and in which to conduct the business and ceremonies of various subordinate Masonic bodies, and a small portion thereof being occupied by the office of the Grand Secretary of the Masonic Grand bodies of this state, is exempt from taxation under the provisions of subdivision 9 of § 2078, Compiled Laws, North Dakota, 1913.

Opinion filed November 14, 1916.

Original proceedings by the State, on the relation of Henry J. Linde, Attorney General, and Enoch Lodge of Perfection A. A. S. R. No. 1, Fargo Council Knights Kadosh A. A. S. R. No. 1, Pelican Chapter of Rose Croix A. A. S. R. No. 1, and Dakota Consistory A. A. S. R. No. 1, fraternal corporations known as the Scottish Rite Bodies of Fargo, North Dakota, and H. C. Plumley, for the issuance of a writ prohibiting and enjoining the state tax commission and others from assessing and listing for taxation certain property used exclusively for Masonic purposes.

Writ issued.

*Lawrence & Murphy,* for relators.

The relators are corporations purely and solely for lodge purposes, and for charitable, benevolent, and fraternal objects, and not for profit. They hold and exclusively use their properties for such purposes and objects. Comp. Laws 1913, §§ 5025, 5030, 5032, 5038, 5039, 5042.

All such property, so held and exclusively used, is exempt from assessment and taxation. Laws 1913, chap. 280; Comp. Laws 1913, §§ 2078, 5025–5042.

Every reasonable presumption is in favor of the constitutionality of a statute enacted by the legislature. 8 Cyc. 801; O'Laughlin v. Carlson, 30 N. D. 213, 152 N. W. 675; State ex rel. Linde v. Taylor, 33 N. D. 76, L.R.A.—, —, 156 N. W. 561; Cooley, Const. Lim. 7th ed. 242.

The general rule is that when private property is claimed as exempt

from taxation, the law under which the exemption is claimed will be strictly construed. Judge v. Spencer, 15 Utah, 242, 48 Pac. 1097; State ex rel. Richards v. Armstrong, 17 Utah, 171, 41 L.R.A. 407, 53 Pac. 981.

There is, however, an exception to this rule, and statutes exempting property used for educational and charitable purposes, or for public worship, should receive a broad and more liberal construction. Salt Lake Lodge v. Groesbeck, 40 Utah, 1, 120 Pac. 194, Ann. Cas. 1914C, 940; Widows' & Orphans' Home v. Com. 126 Ky. 386, 16 L.R.A. (N.S.) 829, 103 S. W. 354; People ex rel. Young Men's Asso. v. Sayles, 23 Misc. 1, 50 N. Y. Supp. 8; Phillips Academy v. Andover, 175 Mass. 118, 48 L.R.A. 550, 55 N. E. 841; Yale University v. New Haven, 71 Conn. 316, 43 L.R.A. 490, 42 Atl. 87; St. Mary's Church v. Tripp, 14 R. I. 307; Curtis v. Androscoggin Lodge, 99 Me. 356, 59 Atl. 518; Massachusetts General Hospital v. Somerville, 101 Mass. 319; People ex rel. Church of St. Mary v. Feitner, 168 N. Y. 494, 61 N. E. 762; Academy of Sacred Heart v. Irey, 51 Neb. 755, 71 N. W. 752; Cassiano v. Ursuline Academy, 64 Tex. 673; Donohugh's Appeal, 86 Pa. 306; Warde v. Manchester, 56 N. H. 508, 22 Am. Rep. 504; Wesleyan Academy v. Wilbraham, 99 Mass. 599.

"A constitutional provision merely authorizing the legislature to exempt certain kinds of property does not by itself grant any exemption." 37 Cyc. 885 and cases cited in note 95, 887.

Under the Constitution the legislature was not prevented from exercising its inherent power of exempting such property as they might deem necessary, and as they deemed for the best public policy, so that the people of the state, by an amendment to the Constitution, eliminated the requirement that all property should be taxed; there then remained the power to exempt the property of these relators as it has been exempted by the existing statute. Wisconsin C. R. Co. v. Taylor County, 52 Wis. 42, 8 N. W. 833; Gilman v. Sheboygan, 2 Black. 510, 17 L. ed. 305; Cooley, Taxn. 145; 1 Desty, Taxn. 124; Farris v. Vannier, 6 Dak. 191, 3 L.R.A. 713, 42 N. W. 31; Sumner County v. Wellington, 66 Kan. 590, 60 L.R.A. 855, 97 Am. St. Rep. 396, 72 Pac. 216; Francis v. Atchison, T. & S. F. R. Co. 19 Kan. 311; Ottawa County v. Nelson, 19 Kan. 237, 27 Am. Rep. 101; Wheeler v. Weightman, 96 Kan. 50; L.R.A.1916A, 846, 149 Pac. 982.

The clause of the Constitution is clearly not self-executing. These various terms look forward to and require action upon the part of the lawmaking branch of the government. Engstad v. Grand Forks County, 10 N. D. 54, 84 N. W. 577.

Where the means are not satisfying, any means may be resorted to which are fairly and properly adapted to accomplish the object of the grant of power. Black, Const. Law, p. 71; 1 Kent, Com. 404; Sutherland, Stat. Constr. § 343.

In liquor matters the legislature has defined intoxicating liquors. It has said that "malt liquor" is intoxicating. Thus it has been held that where a party has been arrested, charged with selling malt liquors, proof offered by him that the liquors sold were not intoxicating was held inadmissible, for the reason that the legislature had defined it. State v. Ely, 22 S. D. 487, 118 N. W. 687, 18 Ann. Cas. 92; State v. Fargo Bottling Works Co. 19 N. D. 396, 26 L.R.A.(N.S.) 872, 124 N. W. 387; State v. Certain Intoxicating Liquors, 76 Iowa, 243, 2 L.R.A. 408, 41 N. W. 6; State v. Colvin, 127 Iowa, 632, 103 N. W. 968; Com. v. Brelsford, 161 Mass. 61, 36 N. E. 677; Black, Intoxicating Liquors, § 2; State v. Frederickson, 101 Me. 37, 6 L.R.A.(N.S.) 186, 115 Am. St. Rep. 295, 63 Atl. 535, 8 Ann. Cas. 48.

In the case at bar, the property is exempt from taxation if for no other reason than that the legislature has said so. Martin v. Mott, 12 Wheat. 19, 6 L. ed. 537.

"The legislature is master of its own discretion," and is the sole judge of the means that are necessary to accomplish its purpose, in the exercise of its power over the subject-matter. Legal Tender Cases, 12 Wall. 457–561, 20 L. ed. 287–315; Hancock v. Yaden, 121 Ind. 366, 6 L.R.A. 576, 16 Am. St. Rep. 396, 23 N. E. 253; State ex rel. Clark v. Haworth, 122 Ind. 467, 7 L.R.A. 240, 23 N. E. 946; Legal Tender Cases, 110 U. S. 421, 28 L. ed. 204, 4 Sup. Ct. Rep. 122; Cooley, Const. Lim. 4th ed. 129; State ex rel. Terre Haute v. Kolsem, 130 Ind. 434, 14 L.R.A. 570, 29 N. E. 595.

The contemporaneous exposition of a statute is always important, and sometimes a controlling guide, in its interpretation. 8 Cyc. 736, 737, and cases cited in notes; Chestnut v. Shane, 16 Ohio, 599, 47 Am. Dec. 387; Com. v. Grant, 2 Woodw. Dec. 379; 36 Cyc. 1135, 1153; 26 Am. & Eng. Enc. Law, 640; Cooley, Const. Lim. 255; Kendall v.

Kingston, 5 Mass. 534; Jackson v. Washington County, 34 Neb. 680, 52 N. W. 169; Hedgecock v. Davis, 64 N. C. 650; United States v. Moore, 95 U. S. 760, 24 L. ed. 588; Hovey v. State, 119 Ind. 386, 21 N. E. 890; Portland Bank v. Apthorp, 12 Mass. 252; McPherson v. Blacker, 92 Mich. 377, 16 L.R.A. 475, 31 Am. St. Rep. 587, 52 N. W. 469; State v. Gerhardt, 145 Ind. 439, 33 L.R.A. 313, 44 N. E. 469; Faribault v. Misener, 20 Minn. 396, Gil. 347; Moers v. Reading, 21 Pa. 199.

Where a statute, by the acts of the government and by adjudications, has been treated as constitutional, the courts will not inquire into its constitutionality. Ferris v. Coover, 11 Cal. 175; Baltimore v. State, 15 Md. 376, 74 Am. Dec. 572; Harrison v. State, 22 Md. 468, 85 Am. Dec. 658; Carson v. Smith, 5 Minn. 78, Gil. 58, 77 Am. Dec. 539; Railroad Comrs. v. Market Street R. Co. 132 Cal. 677, 64 Pac. 1065; Frost v. Pfeiffer, 26 Colo. 338, 58 Pac. 147.

While not conclusive, legislative construction is quite persuasive. Denver v. Adams County, 33 Colo. 1, 77 Pac. 858; Hovey v. State, 119 Ind. 386, 21 N. E. 890; State ex rel. Barber v. Parler, 52 S. C. 207, 29 S. E. 651, 28 S. E. 1023.

The same is true of construction given and acted upon by the state officers and people for a long time. State v. New Orleans R. & Light Co. 116 La. 144, 40 So. 597, 7 Ann. Cas. 724; Gaar, S. & Co. v. Sorum, 11 N. D. 174, 90 N. W. 799; 1 Kent, Com. 465; Cooley, Const. Lim. 81; Ames v. Kansas, 111 U. S. 449, 28 L. ed. 482, 4 Sup. Ct. Rep. 437; Butte City Water Co. v. Baker, 196 U. S. 119, 49 L. ed. 409, 25 Sup. Ct. Rep. 211; Com. v. Lockwood, 109 Mass. 323, 12 Am. Rep. 699; People ex rel. Lynch v. La Salle County, 100 Ill. 495; Re Washington Street Asylum R. Co. 115 N. Y. 442, 22 N. E. 356; Atty. Gen. v. Preston, 56 Mich. 177, 22 N. W. 261; Scanlan v. Childs, 33 Wis. 663; Lick v. Faulkner, 25 Cal. 405.

✓ The Masonic order is a charitable institution, and its property is used exclusively for charitable purposes. Const. § 175; Comp. Laws 1913, §§ 2078, 5025, 5030, 5038; Philadelphia v. Masonic Home, 160 Pa. 572, 23 L.R.A. 545, 40 Am. St. Rep. 736, 28 Atl. 954; Morris v. Lone Star Chapter, 68 Tex. 698, 5 S. W. 519; Morning Star Lodge, v. Hayslip, 23 Ohio St. 144; Massenburg v. Grand Lodge, F. & A. M. 81 Ga. 212, 7 S. E. 636; Brodie v. Fitzgerald, 57 Ark. 445, 22 S. W.

29; People ex rel. Huck v. Western Seaman's Friend Soc. 87 Ill. 246; Montana Catholic Missions v. Lewis & Clarke County, 13 Mont. 559, 22 L.R.A. 634, 35 Pac. 2; Hennepin County v. Brotherhood of Gethsemane, 27 Minn. 460, 38 Am. Rep. 298, 8 N. W. 595; Delaware County v. Sisters of St. Francis, 2 Del. Co. Rep. 149; New Port v. Masonic Temple Asso. 108 Ky. 333, 49 L.R.A. 252, 56 S. W. 405; Bangor v. Rising Virtue Lodge, 73 Me. 428, 40 Am. Rep. 369; Green Bay Lodge v. Green Bay, 122 Wis. 452, 106 Am. St. Rep. 984, 100 N. W. 837; State ex rel. Hibernian Soc. v. Addison, 2 S. C. 499; Salt Lake Lodge v. Groesbeck, 40 Utah, 1, 120 Pac. 194, Ann. Cas. 1914C, 940.

Charity is not confined exclusively to the handing out of money to the poor and destitute. As that term is used in the Constitution and laws it has a much broader and more significant meaning. As used and as was the intention, it is the embodiment of sympathy and kindness, and to teach and practice these tenets is the aim of this order. Salt Lake Lodge v. Groesbeck, 40 Utah, 1, 120 Pac. 197, Ann. Cas. 1914C, 940; Philadelphia v. Masonic Home, 160 Pa. 572, 23 L.R.A. 545, 40 Am. St. Rep. 736, 28 Atl. 954; Swift v. Beneficial Soc. 73 Pa. 362; Delaware County Institute v. Delaware County, 94 Pa. 163; Donohugh's Appeal, 86 Pa. 306; Mitchell v. Franklin County Treasurer, 25 Ohio St. 144; Babb v. Reed, 5 Rawle, 151, 28 Am. Dec. 650; Burd Orphan Asylum v. School Dist. 90 Pa. 21; Hennepin County v. Brotherhood of Gethsemane, 27 Minn. 460, 38 Am. Rep. 298, 8 N. W. 595; Indianapolis v. Grand Master, 25 Ind. 518; Hibernian Benev. Soc. v. Kelly, 28 Or. 173, 30 L.R.A. 169, 52 Am. St. Rep. 769, 42 Pac. 3; Savannah v. Solomon's Lodge, 53 Ga. 93; Henderson v. Strangers' Rest Lodge, 17 Ky. L. Rep. 1041, 17 S. W. 215; State ex rel. Bertel v. Board of Assessors, 34 La. Ann. 574; Petersburg v. Petersburg Benev. Mechanics Asso. 78 Va. 431; Fitterer v. Crawford, 157 Mo. 51, 50 L.R.A. 191, 57 S. W. 532; Zable v. Louisville Baptist Orphans' Home, 92 Ky. 89, 13 L.R.A. 668, 17 S. W. 212; Massachusetts General Hospital v. Somerville, 101 Mass. 319; Widows' & Orphans' Home v. Com. 126 Ky. 386, 16 L.R.A.(N.S.) 829, 103 S. W. 354; Cathedral of St. John v. Denver, 37 Colo. 378, 86 Pac. 1021; Brewer v. American Missionary Asso. 124 Ga. 490, 52 S. E. 804; Franklin Square House v. Boston, 188 Mass. 409, 74 N. E. 675; Curtis v. Androscoggin Lodge, 99 Me. 356, 59 Atl. 518; Com. v. Y. M. C. A. 116 Ky. 711, 105 Am.

St. Rep. 234, 76 S. W. 522; Kentucky Female Orphan School v. Louisville, 100 Ky. 470, 40 L.R.A. 119, 36 S. W. 921; Episcopal Academy v. Philadelphia, 150 Pa. 565, 25 Atl. 55; Burd Orphan Asylum v. School Dist. 90 Pa. 21; Gerke v. Purcell, 25 Ohio St. 229; Plattsmouth Lodge v. Cass County, 79 Neb. 463, 113 N. W. 167; Allen v. Duffie, 43 Mich. 1, 38 Am. Rep. 159, 4 N. W. 427; Saltonstall v. Sanders, 11 Allen, 470; Chamberlain v. Stearns, 111 Mass. 267; Adye v. Smith, 44 Conn. 60, 26 Am. Rep. 424; Norris v. Thompson, 19 N. J. Eq. 307; Suter v. Hilliard, 132 Mass. 413, 42 Am. Rep. 444; St. Joseph's Hospital Asso. v. Ashland County, 96 Wis. 636, 72 N. W. 43; Hinckley's Estate, 58 Cal. 457; State ex rel. Hibernian Soc. v. Addison, 2 S. C. 499; Y. M. C. A. v. Douglas County, 60 Neb. 642, 52 L.R.A. 123, 83 N. W. 924.

The same is true of the Odd Fellows society and of all the other relators. Savannah v. Solomon's Lodge, 53 Ga. 93; State ex rel. Bertel v. Board of Assessors, 34 La. Ann. 574; Fitterer v. Crawford, 157 Mo. 51, 50 L.R.A. 191, 57 S. W. 532; State ex rel. Hibernian Soc. v. Addison, 2 S. C. 499; Indianapolis v. Grand Master, 25 Ind. 522; Massenburg v. Grand Lodge, F. & A. M. 81 Ga. 212, 7 S. E. 636; Morrow v. Smith, 145 Iowa, 514, 26 L.R.A.(N.S.) 696, 124 N. W. 317, Ann. Cas. 1912A, 1183; Petersburg v. Petersburg Benev. Mechanics Asso. 78 Va. 431; Grand River Lodge v. Crawford, 157 Mo. 41, 57 S. W. 1134; Hibernian Benev. Soc. v. Kelly, 28 Or. 173, 30 L.R.A. 169, 52 Am. St. Rep. 769, 42 Pac. 3.

The meaning of the word "exclusive" is to "exclude;" to "bar;" to "shut out;" 'that which is not included." 1 Bouvier's Law Dict. p. 1110; Presbyterian Theological Seminary v. People, 101 Ill. 582; Y. M. C. A. v. Douglas County, 60 Neb. 642, 52 L.R.A. 123, 83 N. W. 926; Stahl v. Kansas Educational Asso. 54 Kan. 549, 38 Pac. 797; Cincinnati College v. State, 19 Ohio, 110; Gerke v. Purcell, 25 Ohio St. 229; People ex rel. Hutchinson v. Collison, 22 Abb. N. C. 52, 6 N. Y. Supp. 711; Salem Lyceum v. Salem, 154 Mass. 15, 27 N. E. 672; Salt Lake Lodge v. Groesbeck, 40 Utah, 1, 120 Pac. 194, Ann. Cas. 1914C, 940; 8 Cyc. 740; St. Paul's Church v. Concord, 75 N. H. 420, 27 L.R.A.(N.S.) 910, 75 Atl. 531, Ann. Cas. 1912A, 350; Book Agents v. Hinton, 92 Tenn. 188, 19 L.R.A. 289, 21 S. W. 321; State, Sisters of Charity, Prosecutor, v. Chatham Twp. 52 N. J. L. 373, 9

L.R.A. 198, 20 Atl. 292; Indianapolis v. Grand Master, 25 Ind. 518;
Fitterer v. Crawford, 157 Mo. 51, 50 L.R.A. 191, 57 S. W. 532;
Philadelphia v. Masonic Home, 160 Pa. 572, 23 L.R.A. 545, 40 Am.
St. Rep. 736, 28 Atl. 954; Hibernian Benev. Soc. v. Kelly, 28 Or. 173,
30 L.R.A. 167, 52 Am. St. Rep. 769, 42 Pac. 3; State v. Fisk Uni-
versity, 87 Tenn. 241, 10 S. W. 284; Widows' & Orphans' Home v. Com.
126 Ky. 386, 16 L.R.A.(N.S.) 844, 103 S. W. 354; Protestant
Episcopal Church v. Prioleau, 63 S. C. 70, 57 L.R.A. 606, 40 S. E.
1026.

Property used exclusively for charitable purposes shall be exempt
from taxation. Salt Lake Lodge v. Groesbeck, 40 Utah, 1, 120 Pac. 192,
Ann. Cas. 1914C, 940; Plattsmouth Lodge v. Cass County, 79 Neb.
463, 113 N. W. 167; Philadelphia v. Masonic Home, 160 Pa. 572,
23 L.R.A. 545, 40 Am. St. Rep. 736, 28 Atl. 954; Savannah v.
Solomon's Lodge, 53 Ga. 93; Fitterer v. Crawford, 157 Mo. 51, 50
L.R.A. 191, 57 S. W. 532; Bangor v. Rising Virtue Lodge, 73 Me. 428,
40 Am. Rep. 369; Indianapolis v. Grand Master, 25 Ind. 518; Massen-
burg v. Grand Lodge, F. & A. M. 81 Ga. 212, 7 S. E. 636; Baltimore
v. Grand Lodge, A. F. & A. M. 60 Md. 282; State ex rel. Bertel v.
Board of Assessors, 34 La. Ann. 574; Cumberland Lodge v. Nashville,
127 Tenn. 248, 154 S. W. 1141; Book Agents v. Hinton, 92 Tenn. 191,
19 L.R.A. 289, 21 S. W. 322.

*Geo. E. Wallace* and *Frank E. Packard,* for defendants.

"All statutes exempting property from taxation must be strictly con-
strued."

"The power to tax rests upon necessity and is inherent in every
sovereignty, and there can be no presumption in favor of its relinquish-
ment." Bailey v. Magwire, 22 Wall. 226, 22 L. ed. 852.

"The rule of strict construction has been so often declared by this
court, and has been so uniformly held everywhere, that we are not at
liberty to regard the question as an open one." Indianapolis v. Grand
Master, 25 Ind. 518; Bangor v. Rising Virtue Lodge, 73 Me. 428, 40
Am. Rep. 736; National Council, K. & L. S. v. Phillips, 63 Kan. 799, 66
Pac. 1011; Wheeler v. Weightman, 96 Kan. 50, L.R.A.1916A, 846,
149 Pac. 977; Lacy v. Davis, 112 Iowa, 106, 83 N. W. 784; State ex
rel. Bertel v. Board of Assessors, 34 La. Ann. 574; Engstad v. Grand
Forks County, 10 N. D. 56, 84 N. W. 577; Minot v. Philadelphia, W.

35 N. D.—20.

& B. R. Co. 18 Wall. 206, 21 L. ed. 888; Northwestern Fertilizing Co. v. Hyde Park, 97 U. S. 666, 24 L. ed. 1038; Petersburg v. Petersburg Benev. Mechanics Asso. 78 Va. 431; Book Agents v. Hinton, 92 Tenn. 188, 19 L.R.A. 289, 21 S. W. 322; Baltimore v. Grand Lodge, A. F. & A. M. 60 Md. 280; Fitterer v. Crawford, 157 Mo. 51, .50 L.R.A. 191, 57 S. W. 532; St. Paul's Church v. Concord, 75 N. H. 420, 27 L.R.A.(N.S.) 910, 75 Atl. 531, Ann. Cas. 1912A, 350; Salt Lake Lodge v. Groesbeck, 40 Utah, 1, 120 Pac. 192, Ann. Cas. 1914C, 940; Boston Lodge v. Boston, 217 Mass. 176, 104 N. W. 453; St. Louis Lodge v. Koeln, 262 Mo. 444, L.R.A.1915C, 694, 171 S. W. 329, Ann. Cas. 1916E, 784; Green Bay Lodge v. Green Bay, 122 Wis. 452, 106 Am. St. Rep. 984, 100 N. W. 837; Parker v. Quinn, 23 Utah, 332, 64 Pac. 961; Cincinnati College v. State, 19 Ohio, 110; American Sunday School Union v. Philadelphia (American Sunday School Union v. Taylor) 161 Pa. 307, 23 L.R.A. 695, 29 Atl. 26; First M. E. Church v. Chicago, 26 Ill. 482; Orr v. Baker, 4 Ind. 86; Philadelphia v. Barber, 160 Pa. 123, 28 Atl. 644; Morris v. Lone Star Chapter, 68 Tex. 698, 5 S. W. 519; Cleveland Library Asso. v. Pelton, 36 Ohio St. 259; Phi Beta Epsilon Corp. v. Boston, 182 Mass. 457, 65 N. E. 824, and cases cited; Amherst College v. Assessors, 173 Mass. 232, 53 N. E. 815; Salem Lyceum v. Salem, 154 Mass. 15, 27 N. E. 672; Mason v. Zimmerman, 81 Kan. 799, 106 Pac. 1005; Atty. Gen. v. Detroit, 113 Mich. 388, 71 N. W. 632.

To be exempt from taxation, property must be owned and used exclusively for benevolent and charitable purposes. This must be the paramount and predominant use to which the property is put. Bangor v. Rising Virtue Lodge, 73 Me. 428, 40 Am. Rep. 369; Curtis v. Androscoggin Lodge, 99 Me. 356, 59 Atl. 518; Orono v. Kappa Sigma Soc. 108 Me. 320, 80 Atl. 831; St. Louis Lodge v. Koeln, 262 Mo. 444, L.R.A.1915C, 694, 171 S. W. 329, Ann. Cas. 1916E, 784; Fitterer v. Crawford, 157 Mo. 51, 50 L.R.A. 191, 57 S. W. 532; New England Theosophical Corp. v. Boston, 172 Mass. 60, 42 L.R.A. 281, 51 N. E. 456; State ex rel. Cunningham v. Board of Assessors, 52 La. Ann. 223, 26 So. 872; Atty. Gen. v. Detroit, 113 Mich. 388, 71 N. W. 632; St. Joseph's Hospital Asso. v. Ashland County, 96 Wis. 636, 72 N. W. 43; Hibernian Benev. Soc. v. Kelly, 28 Or. 173, 30 L.R.A. 167, 52 Am. St. Rep. 769, 43 Pac. 3; Y. M. C. A. v. New York, 113

N. Y. 187, 21 N. E. 86; Young Men's Protestant Temperance & Benev. Soc. v. Fall River, 160 Mass. 409, 36 N. E. 57; People ex rel. Blossom v. Nelson, 46 N. Y. 477; 45 Century Dig. p. 686; 18 Century Dig. § 241; 37 Cyc. 931; Book Agents v. Hinton, 19 L.R.A. 289, note; Widows' & Orphans' Home v. Com. 16 L.R.A.(N.S.) 829, note.

The word "charity" as used in the Constitution and statutes relating to exemptions from taxation means "a gift to promote the welfare of others," "gifts for the benefit of the poor," "endowments for the advancement of learning, science, art, and for other useful and public purposes." Philadelphia v. Masonic Home, 160 Pa. 572, 23 L.R.A. 545, 40 Am. St. Rep. 736, 28 Atl. 594; Black's Law Dict. Gerke v. Purcell, 25 Ohio St. 243; Morice v. Bishop of Durham, 9 Ves. Jr. 399, 32 Eng. Reprint, 656; Doyle v. Lynn & B. R. R. Co. 118 Mass. 195, 19 Am. Rep. 431; Kavanaugh's Will, 143 Wis. 90, 28 L.R.A.(N.S.) 470, 126 N. W. 675; Re Centennial & Memorial Asso. 235 Pa. 206, 83 Atl. 684; Words & Phrases, 1st & 2d Series; Bouvier's Law Dict.

" 'Benevolent' includes objects and purposes that are not 'charitable.' " Van Syckel v. Johnson, 80 N. J. Eq. 117, 70 Atl. 657; Hegeman v. Roome, 70 N. J. Eq. 562, 62 Atl. 393; Words & Phrases, 1st & 2d Series.

A "fraternity" is a body of men associated for business, pleasure, or social intercourse by some common tie, either mutual or formal. Bouvier's Law Dict.

The mere giving of authority by the statute to such corporations or bodies "to apply its funds and property to charity and benevolent objects pursuant to the purpose for which such association is organized" does not make them "charitable institutions exclusively." Comp. Laws 1913, §§ 5017, 5030.

Neither does "long continued, contemporaneous, and legislative construction" of such statutes affect or make such statutes something they are not.

It is only by final judicial interpretation and construction that the meaning of a law may become known and fixed. 6 R. C. L. 59–62; State v. Stockwell, 23 N. D. 96, 134 N. W. 767; 2 Lewis's Sutherland, Stat. Constr. § 474, p. 891; O'Laughlin v. Carlson, 30 N. D. 218, 152 N. W. 675; State ex rel. McCue v. Blaisdell, 18 N. D. 38, 119 N. W. 360; 8 Cyc. 738; Fairbank v. United States, 181 U. S. 283, 45 L. ed.

862, 21 Sup. Ct. Rep. 648, 15 Am. Crim. Rep. 135; 1 Story, Const. §§ 405–407; State ex rel. Morris v. Wrightson, 56 N. J. L. 206, 22 L.R.A. 548, 28 Atl. 56; Stuart v. Laird, 1 Cranch, 299, 2 L. ed. 115; Rogers v. Goodwin, 2 Mass. 475; Cooley, Const. Lim. 84, 85; Scott v. Sandford, 19 How. 393, 15 L. ed. 691; Hepburn v. Griswold, 8 Wall. 603, 19 L. ed. 513; Pingree v. Auditor General (Pingree v. Dix) 120 Mich. 103, 44 L.R.A. 679, 78 N. W. 1025; State ex rel. Atty. Gen. v. Beacom, 66 Ohio St. 507, 90 Am. St. Rep. 599, 64 N. E. 427; McPherson v. Blacker, 92 Mich. 384, 16 L.R.A. 475, 31 Am. St. Rep. 587, 52 N. W. 469; Henry v. Cherry, 30 R. I. 138, 24 L.R.A.(N.S.) 991, 136 Am. St. Rep. 928, 73 Atl. 97, 18 Ann. Cas. 1006; Somerset County v. Pocomoke Bridge Co. 109 Md. 1, 71 Atl. 462, 16 Ann. Cas. 874; State ex rel. Hibbard v. Cornell, 60 Neb. 276, 83 N. W. 72.

The Constitution of each state, so far as it is consistent with the provisions of the Federal Constitution, is the fundamental law of the state and is part of its supreme law, and acts passed by the legislature inconsistent therewith are invalid.  6 R. C. L. §§ 34, 43, 151–153; Page v. Allen, 58 Pa. 338, 98 Am. Dec. 272; Rison v. Farr, 24 Ark. 161, 87 Am. Dec. 52; 37 Cyc. 886; Farris v. Vannier, 6 Dak. 191, 3 L.R.A. 713, 42 N. W. 31.

The legislative determination of the methods, regulations, and restrictions in reference to the subjects of this litigation, is final, except when so arbitrary as to be violative of the constitutional rights of citizens.  6 R. C. L. §§ 117, 154; State v. Fargo Bottling Works Co. 19 N. D. 413, 26 L.R.A.(N.S.) 872, 124 N. W. 387; Feibelman v. State, 130 Ala. 122, 30 So. 384; State v. Fredrickson, 6 L.R.A.(N.S.) 186, and note, 101 Me. 37, 115 Am. St. Rep. 295, 63 Atl. 635, 8 Ann. Cas. 48; Metropolitan Bank v. Van Dyck, 27 N. Y. 536; M'Culloch v. Maryland, 4 Wheat. 431, 4 L. ed. 607; State ex rel. Terre Haute v. Kolsem, 14 L.R.A. 566, and note, 130 Ind. 434, 29 N. E. 595.

It was not the intention of the framers of the Constitution to exempt this class of property from taxation.  The debates of the constitutional convention so affirmatively show.  Debates of Constitutional Convention, p. 457.

"If two or more amendments shall be submitted at the same time, they shall be submitted in such manner that the electors shall vote for or against them separately."

The amendments here relied upon by the relators were never properly submitted or adopted, and are therefore unconstitutional. Const. § 202; Records of the Sessions of 1911 and 1913; State ex rel. McClurg v. Powell, 77 Miss. 543, 48 L.R.A. 652, 27 So. 927; Knight v. Shelton, 134 Fed. 423; McBee v. Brady, 15 Idaho, 761, 100 Pac. 97; 6 Am. & Eng. Enc. Law, 2d ed. 908; Collier v. Frierson, 24 Ala. 100; Koehler v. Hill, 60 Iowa, 543, 14 N. W. 738, 15 N. W. 609; State v. McBridge, 4 Mo. 303, 29 Am. Dec. 636; State ex rel. Hudd v. Timme, 54 Wis. 318, 11 N. W. 785; State v. Swift, 69 Ind. 505; State ex rel. Hahn v. Young, 29 Minn. 474, 9 N. W. 737; Secombe v. Kittelson, 29 Minn. 555, 12 N. W. 519; Kadderly v. Portland, 44 Or. 118, 74 Pac. 710, 75 Pac. 222; Rice v. Palmer, 78 Ark. 432, 96 S. W. 396; State ex rel. Postel v. Marcus, 160 Wis. 354, 152 N. W. 419.

CHRISTIANSON, J. This is a proceeding against the state tax commission, the county auditor of Cass county, and the assessor of the city of Fargo, to prevent them from assessing and listing for taxation certain property belonging to the relators.

Four of the relators are separate and distinct fraternal corporations, and together constitute what is commonly known as the Scottish Rite Bodies of Fargo, North Dakota.

The relators assert that they are constituent parts of the great body known as Free Masons; that the said Masonic Order, of which they are a part, is a benevolent and charitable organization and institution not organized for profit, but organized and existing in this state under and by virtue of the laws of this state relative to such organizations, and that the property sought to be assessed and listed for taxation is used exclusively for such charitable purposes, and is specifically exempted from taxation under the provisions of paragraph 9 of § 2078 of the 1913 Compiled Laws.

The relators further assert that the state tax commission, under the alleged claim that the statute exempting relators' property from taxation is unconstitutional, have directed the city assessor to assess such property and the county auditor to place the same upon the tax rolls as taxable property, notwithstanding the provisions of the statute; and that, unless restrained from so doing, such officers will assess and otherwise in all respects treat such property as taxable; that the said state

tax commission is endeavoring and threatens to require all other assessors and county auditors in the state to assess and cause taxes to be levied against all property of Masonic bodies throughout the state.

Respondents filed an answer wherein they deny that the property sought to be assessed is used exclusively for charitable purposes, and assert "that the paramount use to which the property of relators is put is that of a lodge, and that whatever charity is dispensed by relators is merely incidental, and that the dispensing of charity is not the object of the organization of Masonic bodies." They further assert that paragraph 9 of § 2078, Compiled Laws 1913, is unconstitutional and void for the reason "that it attempts to grant exemption from taxation not contemplated by § 176 of the Constitution, and is broader and more comprehensive than said constitutional provision, and is therefore unconstitutional as violating said § 176 of the state Constitution."

Relators request that we assume original jurisdiction for the reasons, among others, that the questions involved affect directly every organization whose property is declared to be exempted by the provisions of the statute in question; that the questions involved affect directly, not only thousands of citizens, but practically every taxing district of the state of North Dakota; that the taxing officers mentioned are asserting official power, not by virtue of, but contrary to, the laws established by the lawmaking body of the state; that such taxing officials have arrogated to themselves sovereign rights and thereby infringed upon the rights and prerogatives of each and every citizen of the state.

The jurisdiction of the court has not been challenged. The attorney general of the state, who appears as one of the relators, joins in the application, requesting this court to assume jurisdiction; and the members of the state tax commission who appears as attorney for the respondents has filed a written request that this court assume such jurisdiction.

While we are not wholly satisfied that the case presented is one in which we are required to, or necessarily should, exercise original jurisdiction, still in view of all the facts, including the request of the chief law officer of the state and the request of all parties to the proceedings, including the state tax commission, and as it is clearly a matter which affects directly or indirectly every taxpayer in the state, and involves the question of legislative power to deal with the subject of exempting

property from taxation, we have decided to assume jurisdiction of the controversy.

It is well settled that one who is not prejudiced by the enforcement of a legislative enactment cannot question its constitutionality or obtain a decision as to such invalidity on the ground that it impairs the rights of others, and "it has been said that courts cannot pass on the question of the constitutionality of a statute abstractly, but only as it applies and is sought to be enforced in the government of a particular case before the court, for the power to revoke or repeal a statute is not judicial in its character" (6 R. C. L. p. 90), although in some jurisdictions "an exception to this rule has been recognized in some jurisdictions in the case where the jurisdiction of the court itself depends on the validity of a statute, and the attention of the court is brought to that fact by persons interested in the effect to be given to the statute, although not actually interested in the case before the court." 6 R. C. L. p. 90. And under the principle that the constitutionality of a statute cannot be questioned by one whose rights are not affected thereby and who has no interest in defeating it, it is generally held that a public officer who would not be personally liable for his acts has no such interest as entitles him to question the constitutionality of the statute. 6 R. C. L. p. 92. But there are certain well-recognized exceptions to this rule, as where the officer in the discharge of his duties is required to determine which of two different superior boards (one acting under a constitutional and the other under an unconstitutional statute), issuing conflicting orders, has authority to direct him in the discharge of his official duties. State ex rel. Miller v. Leech, 33 N. D. 513, 157 N. W. 492.

Whether the respondents in this case have sufficient interest to assert the unconstitutionality of the statute exempting relators' property from taxation is a doubtful question, and one upon which we express no opinion, as the sufficiency of the answer setting forth this defense (while referred to on oral argument) has not been challenged by motion, demurrer, or reply, and all parties virtually concede that the prime and controlling question in this case is whether the statute under consideration is constitutional, and this is in reality the only question that has been properly argued and submitted to this court.

The sole question presented for our determination in this case, there-

fore, is whether subdivision 9 of § 2078 of North Dakota 1913 Compiled Laws is constitutional.

The state Constitution as originally adopted provided that "laws shall be passed taxing by uniform rule all property according to its true value in money, but the property of the United States and the state, county and municipal corporations, both real and personal, shall be exempt from taxation; and the legislative assembly shall by a general law exempt from taxation property used exclusively for school, religious, cemetery or charitable purposes." . . . Const. § 176.

In 1897 the legislature, in compliance with the directions contained in the above-quoted constitutional provision, enacted legislation relating to revenue and taxation, and therein provided that "all buildings belonging to institutions of purely public charity, including public hospitals, together with the land actually occupied by such institution, not leased or otherwise used with a view to profit and all moneys and credits appropriated solely to sustain, and belonging exclusively to, such institutions," should be exempt from taxation. Laws 1897, chap. 126.

The Act of 1897, as well as § 176 of the Constitution, was construed by this court in Engstad v. Grand Forks County, 10 N. D. 54, 84 N. W. 577. In that decision this court held that the clause in § 176 of the state Constitution that "the legislature shall by a general law, exempt from taxation property used exclusively for school, religious, cemetery, or charitable purposes," was not self-executing, but "lays a command upon the legislative assembly, and requires that body, by general law, to exempt certain property from taxation, among which is property used exclusively for charitable purposes."

The court further held that the provisions of the act did not apply to property which was owned and operated by an individual, but that only property belonging to an institution was within the provisions of the statute.

In disposing of the contention that the statute, if so construed, would be unconstitutional, the court said: "It may possibly have been the legislative purpose, in enacting the general exemption law embraced in § 1180, supra, to fully comply with this constitutional mandate; but we are not at liberty to indulge in mere conjecture as to what was intended. Our duty is to fairly construe the language actually employed by the legislature, and from it determine the legislative intent. In

doing so, *we reach the conclusion, as has been seen, that the legislature did not intend to go as far as the language of the Constitution required it to go.* The legislature, by its language, has not exempted from taxation any and all property devoted exclusively to charitable uses, but has, on the contrary, only exempted so much thereof as belongs to 'institutions' which dispense public charity. But in exempting only a part of the property which is or may be devoted to charitable uses, there has been no violation of any inhibition found in the organic law. *The Constitution required the legislature to exempt what it has exempted; · but the lawmaking body has not perhaps gone to the full extent required by the very broad terms employed in the clause we have quoted from § 176 of the state Constitution.* It is certainly clear to our minds that, notwithstanding the fact that the legislative branch has not seen fit to execute the constitutional mandate to the full measure intended, such omission cannot operate to annul a statute which does execute the mandate, but only in part."

The opinion in Engstad v. Grand Forks County, supra, was filed on November 22, 1900. The legislative assembly which convened in January, 1901, amended the law construed in Engstad v. Grand Forks County, supra, and incorporated therein subdivision 9 (the provision involved in this proceeding), which provides for the exemption from taxation of "the personal and real property owned by charitable associations known as posts, lodges, chapters, councils, commanderies, consistories, and like organizations and associations not organized for profit, grand or subordinate, and used by them for places of meeting, and to conduct their business and ceremonies; provided, however, *that such property is used* exclusively for such charitable purposes." Laws 1901, chap. 152.

The legislative enactment of 1901 contained an emergency clause declaring that an emergency existed "in that there is no exemption from taxation of the class of property mentioned in subdivision 9," and that therefore the act should take effect and be in force from and after its approval.

The same legislature also enacted laws providing that "associations known as lodges, chapters, posts, encampments, councils, commanderies, consistories and other similar organizations, having a seal and working under a charter issued by some grand or sovereign body of a like char-

acter to themselves, of the fraternities or associations commonly known as the various organizations of Free Masons, Independent Order of Odd Fellows, Grand Army of the Republic, Knights of Pythias and other similar benevolent or charitable fraternities or associations, not organized for profit or for fraternal insurance, located in this state, shall, from and after the taking effect of this article, be deemed to be corporations, notwithstanding no articles of incorporation have been filed, and no charter granted by this state. . . . Any such association has power: . . . 9. To apply its funds and property to charitable and benevolent objects pursuant to the purpose for which such association is organized." Laws 1901, chap. 89; Comp. Laws 1913, §§ 5025, 5030.

The legislative intent expressed in the above-quoted statutory provisions seems too plain for doubt. The legislature declared the various Masonic bodies and other like organizations to be "charitable associations." The legislature further declared that the property used by such bodies for places of meeting and to conduct their business and ceremonies is used for charitable purposes. The language used by the legislature is so plain and the legislative purpose and intent so manifest that no doubt can exist. But if the meaning of the statute be deemed doubtful, we are reminded that the foregoing provisions have remained part of the statute law of this state since 1901, although subsequent legislatures have made certain changes in the law designating the property declared to be exempt from taxation. That the same legislature which created the state tax commission also amended and re-enacted the law classifying the property declared to be exempt from taxation, and the provision involved in this controversy (Comp. Laws 1913, § 2078, subd. 9) was re-enacted without any modification whatever. Laws 1911, chap. 290, It was again re-enacted by the legislature in 1913. Laws 1913, chap. 280.

The provision, therefore, has remained a part of the statute law of this state for fifteen years. During this time it has not only been treated as valid by the various administrative officers and boards, but has received the approval of three different legislative assemblies and three different governors. In fact, as we have already stated, it was re-enacted by the same legislative assembly and approved by the same governor who respectively enacted and approved the law creating the

state tax commission itself. The contemporaneous construction placed thereon by the various administrative officers and boards is entitled to great weight, and the acquiescence in and approval of such construction by subsequent legislative assemblies and chief executives ought to dispel all possible doubt as to the legislative intent. 36 Cyc. 1140, 1142; Lewis's Sutherland, Stat. Constr. 2d ed. §§ 472 et seq.

The state tax commission, however, contends that the Masonic bodies are not charitable associations, and that property used for their places of meeting and to conduct their business and ceremonies is not used for charitable purposes; that it was beyond the constitutional power of the legislature to so declare, and that consequently the provision under consideration is unconstitutional. The relators, on the other hand, contend that the Masonic bodies are charitable associations, and that property used exclusively for the Masonic purposes designated in the statute is in fact used exclusively for charitable purposes; that the legislature is vested with power to determine what property is used exclusively for charitable purposes; and that the legislature in exercise of this power has determined that the property of Masonic organizations, when used for places of meeting and to conduct their business and ceremonies of such organizations, is used exclusively for charitable purposes.

Much space has been devoted in the briefs of the respective counsel to, and many authorities have been cited upon, the question of what is meant by the word "charity" and its derivative "charitable." The word "charity," like many other words, has both a lay meaning and a legal meaning. 5 R. C. L. 291. The principle of charity was recognized, even before the adoption of Christianity, by the Roman law. 6 Cyc. 898. And while certain ingredients of the Roman law were incorporated into the common law of England, there was also incorporated with them the ecclesiastical element introduced with Christianity (5 R. C. L. 296; 6 Cyc. 898). And the term "charity" as used in our law "no doubt takes shades of meaning from the Christian religion, which has largely affected the great body of our laws." Allen v. Duffie, 43 Mich. 1, 38 Am. Rep. 159, 4 N. W. 427; First M. E. Church v. Donnell, 110 Iowa, 5, 46 L.R.A. 858, 81 N. W. 171; Ould v. Washington Hospital, 95 U. S. 303, 24 L. ed. 450. And "the oft-recurring prayer, 'This do in work of charity,' in the earliest appeals to the English chancellor by those who had no remedy, shows that the common, if not the

equitable, concept of the term under Christian influences was the same in remote and modern times." 6 Cyc. 898.

In the broadest sense charity includes whatever proceeds from the sense of moral duty or from humane feelings towards others, uninfluenced by one's own advantage or pleasure. 6 Cyc. 897.

Ruling Case Law (5 R. C. L. pp. 292, 293) says: "A precise and complete definition of a legal charity is hardly to be found in the books, but it is certain that in legal parlance the word 'charity' has a much wider significance than in common speech. Probably the most comprehensive and carefully drawn definition of a charity that has ever been formulated is that it is a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering, or constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government. It is immaterial whether the purpose is called charitable in the gift itself, if it is so described as to show that it is charitable in its nature. Another definition capable of being easily understood and applied is that given by Lord Camden as follows: 'A gift to a general public use, which extends to the poor as well as the rich.' The theory of this is that the immediate persons benefited may be of a particular class, and yet if the use is public in the sense that it promotes the general welfare in some way, it has the essentials of a charity. Again, charity has been declared to be active goodness; the doing good to our fellow men, fostering those institutions that are established to relieve pain, to prevent suffering, and to do good to mankind in general, or to any class or portion of mankind."

The question whether a Masonic lodge is, in law, a charitable organization, while a new one in this court, is by no means a new one in the legal annals of this country. This question has been presented to and determined by many different courts, and while there is some conflict among the decisions, the greater weight of authority sustains the view that a Masonic lodge is a charitable organization. See Morrow v. Smith, 145 Iowa, 514, 124 N. W. 316, and extended notes to this decision as reported in Ann. Cas. 1912A, 1183, and 26 L.R.A. (N.S.) 696. See also Fitterer v. Crawford, 157 Mo. 51, 50 L.R.A. 191, 57

S. W. 532; State ex rel. Bertel v. Board of Assessors, 34 La. Ann. 574; Indianapolis v. Grand Master, 25 Ind. 522; Salt Lake Lodge v. Groesbeck, 40 Utah, 1, 120 Pac. 194, Ann. Cas. 1914C, 940; Plattsmouth Lodge v. Cass County, 79 Neb. 463, 113 N. W. 167; Cumberland Lodge v. Nashville, 127 Tenn. 248, 154 S. W.. 1141; 5 R. C. L. 373.

It is unnecessary for us,. however, in this case to determine whether a Masonic lodge is a charitable organization. The legislature has determined this question, and in positive and unequivocal terms declared that the several Masonic bodies are charitable organizations, and that their property, when used for the purposes specified in the statute, is used for charitable purposes, and, as such, exempt from taxation. We are not called upon, nor is it our function, to review the correctness of this legislative determination. 6 R. C. L. p. 112. For it must be presumed that the legislature had before it when the statute was passed any evidence that was required to enable it to act; and the passage of the statute must be deemed a finding by the legislature of the existence of the facts justifying the enactment thereof. 6 R. C. L. pp. 102, 111, 112. We have no power to supervise the acts of the legislature, or substitute our judgment for its judgment upon any matter within the scope of its constitutional powers. Our authority is limited to an inquiry into and a determination of whether the legislature has exceeded its constitutional powers, and has arbitrarily classified property as entitled to exemption from taxation on the ground that it was used for charitable purposes, when clearly and unquestionably the property sought to be exempted is not within the class which the legislature has declared it to be.

Every reasonable presumption is in favor of the constitutionality of a legislative enactment, as it is presumed that the legislature acted within its constitutional powers and enacted a valid law. This presumption is conclusive unless it is clearly shown that the enactment is prohibited by the state or Federal Constitution. State ex rel. Linde v. Taylor, 33 N. D. 76, L.R.A. —, —, 156 N. W. 564.

The primary duty of the courts is to construe statutes with reference to the Constitution, and it is only when a statute clearly violates the provisions of the Constitution that the courts may declare the statute to be unconstitutional. · 6 R. C. L. p. 103.

The authorities cited furnish small aid in determining the question before us. Most of the decisions cited involved the construction of some particular statute and a determination of whether a Masonic lodge (or some other fraternal body) was, in fact, a charitable organization within the meaning of the particular statute construed. That is true of the decision of the supreme court of Maine in the leading case of Bangor v. Rising Virtue Lodge, 73 Me. 428, 40 Am. Rep. 369. It is true of the decision of the supreme court of Massachusetts in Boston Lodge v. Boston, 217 Mass. 176, 104 N. E. 453; of the decision of the supreme court of Wisconsin in Green Bay Lodge v. Green Bay, 122 Wis. 452, 106 Am. St. Rep. 984, 100 N. W. 837; and of the decision of the supreme court of Michigan in Atty. Gen. v. Detroit, 113 Mich. 388, 71 N. W. 632. And the statute construed in the latter case expressly provided that the exemption granted thereby should "not apply to fraternal or secret societies." The question of whether the legislature had constitutional power to classify Masonic lodges as charitable organizations and exempt from taxation their property used exclusively for Masonic purposes was not involved in any of those cases. And while in other decisions constitutional provisions are referred to and considered in connection with the construction of the statute involved, no authority has been called to our attention wherein a court was confronted with a legislative enactment (as in the case at bar) which specifically declared the different Masonic bodies to be charitable organizations, and the property belonging to such bodies and actually used by them exclusively for their corporate or associated purposes to be exempt from taxation, on the ground that such property is used for charitable purposes. And while in many of the different authorities cited, general statutes exempting the property of charitable organizations or property used for charitable purposes from taxation were construed, a great number, in fact a greater number, of the courts found, as a matter of fact, that Masonic bodies are charitable organizations, and as such entitled to the benefits of the general statutes exempting the property of such organizations from taxation. See Morrow v. Smith, 145 Iowa, 514, 26 L.R.A.(N.S.) 696, 124 N. W. 316, and authorities collated in an extended note to this case as published in Ann. Cas. 1912A, 1187.

The North Dakota Constitution was framed and adopted in 1889. Long prior thereto a number of the courts of this country had declared

the society of Free Masons to be a charitable organization. It was so adjudged by the supreme court of Alabama in 1861 (Burdine v. Grand Lodge, 37 Ala. 478); by the supreme court of Indiana in 1865 (Indianapolis v. Grand Master, 25 Ind. 518); by the supreme court of Georgia in 1874 (Savannah v. Solomon's Lodge, 53 Ga. 93); by the supreme court of Maryland in 1878 (Appeal Tax. Ct. Const. v. Grand Lodge, G. O. H. 50 Md. 421); by the supreme court of Louisiana in 1882 (State ex rel. Bertel v. Board of Assessors, 34 La. Ann. 574). And in the case of King v. Parker, 9 Cush. 71, decided in 1851, the supreme court of Massachusetts held that a trust expressed in a deed to individuals for the use of an unincorporated Masonic lodge was in its nature perpetual, since one of the leading objects of such lodge was that of charity.

In Burdine v. Grand Lodge, supra, the supreme court of Alabama, said: "The society known as Free Masons has long existed in this country, and in almost or quite every part of it. The purpose and objects of the society have been made public in numerous books, periodicals, and public addresses. From all these sources of information, and from the generally received and accredited judgment of the public, the sole purpose and object with which Masonic institutions acquire money and property, beyond their current expenses as a society (furniture, lights, fuel, stationery, and the like), are for the bestowal of reliefs and charities to the needy. In addition, the 3d and 4th sections of the act to incorporate Masonic lodges in the state of Alabama tend to confirm the belief that the society is eleemosynary in its aims. Under these circumstances, we hold that we will take judicial notice that the grand and subordinate lodges of Free Masons within the state of Alabama constitute a charitable or eleemosynary corporation." 37 Ala. 482.

While not necessary to a determination of this cause, it may be mentioned that relators assert that the charitable nature of the Masonic organization is established by the following facts set out in the petition herein: "The object and purpose of the said order of Freemasonry is philanthropy, benevolence, and to carry out all charitable purposes and objects, all of which is not confined to its members, but extends to all people at large; and that among other objects and purposes is the object and purpose to nurse, care for, and provide for its sick, afflicted, and needy members and their families, and bury the dead; to care for the

widows of its deceased members and educate their orphan children; to contribute to the maintenance and support of certain homes and public sanatoriums for indigent and afflicted persons, located in this state and elsewhere; to furnish the funds necessary to build and maintain tubercular sanatoriums; to contribute to and assist in the support of public institutions of charity; to care for and assist in caring for destitute persons, whether members or not, who may become a charge upon the public of the state of North Dakota; that such things as hereinbefore set out are not confined to the members of the said order and their families, but extends to all who are in need or distress; that among the specific things now being done in furtherance of said objects and purposes are these: The furnishing of the funds necessary to build and maintain a sanatorium for tubercular patients in the state of North Dakota; and to build and maintain a Masonic cottage at Dunseith Sanatorium for tubercular patients; to operate and maintain the Masonic Welfare Association, which organization collects and disburses to indigent and distressed persons who are members of the several Masonic orders funds of many hundred dollars per year, a portion of which said fund is disbursed as a public charity to non-Masons.

"The operation and maintenance of a fund known as an almoner's fund, which fund is collected and disbursed by an officer known as the almoner exclusively in general public charity to the extent of several hundred dollars per year, and which disbursement is made by the almoner secretary, and without being subjected to the supervision of any specific officer or board, and is devoted wholly and exclusively to the needy and distressed among the general public to whom the almoner is referred, or whom he finds by his own investigation.

"The collecting and disbursing to organized public charities such as the State Children's Home, the Crittenton Home, the Front Street Mission in the city of Fargo, the Salvation Army, and like organizations, funds aggregating hundreds of dollars annually, all of which are exclusive public charities.

"The collecting and distributing to its indigent and distressed members and to non-Masons funds amounting to several hundred dollars per year.

"The raising of funds and contributing to public charities such as

the Belgian Relief Fund, Red Cross Funds, Associated Charities, and all matters of public need.

"The maintenance of and assistance in maintenance of employment agencies to assist without charge Masons and their families in finding places of employment.

"That the extent of said benevolent and charitable work of the said order is large and greater than any public charity in the state of North Dakota, and that as an illustration thereof affiant alleges that the said Masonic organization contributes fully one half of the moneys and funds necessary to maintain the Children's Home in Fargo, an institution of great public charity and need.

"Affiant further says that one of the general and primary objects of said order and institution is to apply in general to its members and to all persons the principle of benevolence and philanthropy, and to extend charity in its broadest and highest meaning to any and all persons with whom its members come in contact, and that all of the said property of the relator is used exclusively for the purposes as hereinbefore set out, and that the property in question is only to a minor extent used for administrative purposes, and that less than one tenth of the space of said building before referred to is used in providing offices for the officers engaged in the administration of the business of the said Masonic bodies, and that no revenue or income is received from the use of said properties except that such revenues and income as hereinbefore set out and as derived from the dues of said members is used exclusively for the maintenance of said buildings and to be expended in the foregoing matters of benevolence, philanthropy, and charity, and to carry out the objects and purposes hereinbefore set forth, and that such property is not in any manner used for business purposes."

No attempt was made to define "charitable purposes" in the state Constitution, or to determine what organizations or institutions would be entitled to the benefit of the exemption which the Constitution directed the legislature to put into effect. Nothing was said to indicate any intent to exclude secret or fraternal societies from the benefit of such exemption, or (as in some states) to restrict such exemption to property devoted purely and exclusively to purposes of "*public*" charity.

When the constitutional convention framed, and the people adopted, the Constitution, they not only invested the legislature with power to

35 N. D.—21.

exempt from taxation certain classes of property, but they in plain and unmistakable terms directed "that the legislative assembly shall by general law exempt from taxation property used exclusively for school, religious, cemetery or charitable purposes." Const. § 176. This constitutional command was addressed to the legislature, and not to the courts. 6 R. C. L. 58. The provision was not self-executing. Its terms looked forward to, and required, "ulterior action upon the part of the lawmaking branch of the government." Engstad v. Grand·Forks County, 10 N. D. 54, 84 N. W. 577. The governmental policy therein declared depended upon, and could be put into effect only by, legislative action.

The provision related to taxation,—a matter peculiarly within the province of the legislative department of the government. 37 Cyc. 724. See also State Const. §§ 174 to 181, inclusive. It involved and required the exercise of legislative power to give effect to a governmental policy announced in the Constitution. Consequently, the contemporaneous construction and interpretation given by the legislature is entitled to a great deal of weight, and should not be departed from unless manifestly erroneous. 6 R. C. L. p. 63. See also Gaar, S. & Co. v. Sorum, 11 N. D. 174, 90 N. W. 799.

The legislative construction and determination, as we have already stated, was in harmony with the weight of judicial authority in this country. And in our opinion we have no right to say that the legislature exceeded its constitutional authority in enacting the statute under consideration.

It is also suggested by the respondents that the property is not exempt for the reason that the office of the secretary of the Masonic Grand lodge and other grand bodies is maintained in this building. The statutes which we have quoted are not susceptible of this construction. The intent was clearly to exempt from taxation all property belonging to Masonic organizations, and devoted exclusively to Masonic use; i. e., "for places of meeting, and to conduct their business and ceremonies." The legislative intent seems plain. No part of the building is leased for profit or income for business or non-Masonic purposes. The entire property is devoted solely to purposes connected directly with and essential to the maintenance of the Masonic organization in this state. The property is clearly within the provisions of the statute, and it is

our duty to give effect to the law as promulgated by the lawmaking branch of the government.

The writ will issue as prayed for.