151 So.2d 439 (1963)
Agnes P. SNEDEKER et al., as and constituting the Florida Board of Massage, Appellants,
v.
VERNMAR, LTD., a limited partnership under the laws of the State of Florida, et al., Appellees.
No. 31412.
Supreme Court of Florida.
February 20, 1963.
Rehearing Denied April 16, 1963.
*440 Richard W. Ervin, Atty. Gen., and David U. Tumin, Asst. Atty. Gen., for appellants.
Simmonite, Budd & Walsh and Garland M. Budd, Miami, for appellees.
DREW, Justice.
The complaint initiating this litigation was filed in July, 1958, by appellees, operators of Stauffer System reducing establishments, seeking a declaratory decree and injunction to prevent enforcement of the law regulating masseurs in this state, Chapter 480, F.S. 1957, F.S.A.,[1] against them by the appellant Florida Board of Massage.
Among the express statutory definitions of persons covered by the law in question, Section 480.01(1), are those who administer "treatments with any mechanical or electrical apparatus for the purpose of body slenderizing, body reducing or body contouring," or who administer "body massage either by hand or by any mechanical or electrical apparatus or device * * * applying such movements as stroking, friction, rolling, vibration, kneading, cupping, pettrasage, rubbing, effleurage, tapotement." Related provisions require registration of all such persons and establish prerequisites including a diploma or credentials from an accredited massage school or proof of like experience or education, together with examination in specified subjects. Section 480.09 required for such schools in 1957 not less than 600 hours of instruction in physiology, anatomy, massage, hydrotherapy and other techniques of the trade, since increased to 950 hours minimum.
The complaint described at length the system by which plaintiffs operated, by franchise, certain electrically powered mechanical tables allegedly providing "passive exercise" for muscle relaxation, stimulation of circulation, and reduction of fatty tissue. The plaintiffs set forth their inability to comply with the educational requirements of Chapter 480, asserted that its provisions had no reasonable relation to their occupation, and claimed that its enforcement would deprive them of property and liberty without due process of law and would deny to them the equal protection of the laws, contrary to state and federal constitutional provisions.
This appeal under Article V, Section 4 (2), Florida Constitution, directly to this Court from the decree enjoining the enforcement of the controverted portions of the statute against the plaintiffs, presents initially the jurisdictional issue of whether the decree is a "decision directly passing upon the validity of a statute" so as to authorize original review here under the cited section. The equitable relief granted by the decree must, of course, be predicated on a decision either that the statute did not in terms apply to plaintiffs, or that insofar as it did so apply it was unconstitutional and invalid. In the face of the plain words of the law[2] which involve no ambiguity susceptible of construction, and the recognition of same by the parties implicit in their exclusive reliance on constitutional infirmities, the decision cannot be regarded as one construing the statute to be inapplicable. Nor does the record indicate, as it has in previous cases, alternative theories upon which the decision might rest so as to warrant remand for clarification.[3] The decree in a situation such as that at bar is, therefore, necessarily one directly passing upon the validity of a *441 statute for the purposes of direct appeal to this Court under Article V, without regard to any debate over alleged ambiguities or confusion in its language, and, in fact, without reference to any specific expression by the court as to the intended effect of its decree for plaintiffs.
The real confusion in this jurisdictional area has arisen from the attempt to distinguish the legal effect of a decision holding a statute unconstitutional as applied to specific facts from that of a decision "that the law itself was constitutional or unconstitutional irrespective of its application to pertinent facts." Stein v. Darby, Fla. 1961, 134 So.2d 232, 236.[4] To whatever extent the opinion in the cited case excludes decisions in the first category (i.e. those finding a statute invalid as applied to specific facts) from the appellate jurisdiction of this Court under Article V, Section 4, supra, we must recede from such construction of the provision for appeal here from any "decision directly passing upon" the pertinent issues of statutory validity or constitutionality. Our conclusion is dictated by a consideration of historical limitations on judicial power to nullify legislative acts for constitutional transgression, under which a decision upon statutory validity cannot normally be rendered in the abstract or upon any consideration other than its application in a certain case. The traditional statement is that courts can pass on the constitutionality of a statue "only as it applies and is sought to be enforced in the determination of a particular case before the court, for the power to revoke or repeal a statute is not judicial in its character."[5] A decision that a statute in particular circumstances collides with constitutional inhibitions may, as in this case, deprive it of only part instead of all of its effect, depending on issues of separability and intent, and the collision or violation may be plain from the terms of the law in controversy or from such terms only as they operate or apply in the particular case.[6] The adjudication, however, *442 of validity or invalidity in every such case is a decision passing upon the validity of the statute as applied to the facts at bar,[7] unless, of course, the court ultimately concludes that the terms of the law can be construed as inapplicable to such facts, in which event the constitutional issue is not decided. The decision here, as already noted, enjoins enforcement of a statute which patently includes the plaintiffs within its terms and is therefore not susceptible of construction on this point.
The Constitution vests in litigants the right to take "appeals * * * directly to the supreme court, as a matter of right * * * from final judgments or decrees directly passing upon the validity of a state statute." Art. V, Sec. 4. The test of the effect of the trial court's decree or disposition of the cause,[8] and its effect with respect to the pertinent issue of statutory validity or constitutionality must be determined by reference to record issues, and decided by this Court upon that record in conjunction with but not subject to opinions of the trial forum upon the point. The jurisdictional issue we have accordingly disposed of in favor of the appeal in this case.
Upon voluminous and conflicting testimony of medical and lay witnesses the court below concluded ultimately that there was not in this case any reasonable relationship between the statutory requirements and the public safety or welfare because the course of technical training detailed in Section 480.09 would not make the appellees more competent in their particular occupation or enable them to perform those limited functions with any significantly greater protection of the public interests in behalf of which police power may be exercised. We concur in this conclusion.
While the evidence is to the effect that operators of the apparatus in question are not confined strictly to mechanical activation of the tables, and that use by patrons with pre-existing abnormalities might involve risk of injury, there is nevertheless substantial uniformity of opinion in the record that the required courses would not in any event enable an operator to diagnose such conditions or eliminate that risk. Many of the statutory prescriptions are obviously unrelated to competent performance of the limited activities involved in appellees' operations, and the evidence amply sustains the court's findings in this respect. Occupational regulations of some nature might conceivably be lawfully imposed, but the problem presented in judicial review of legislation under constitutional attack is limited to determination of the propriety of the requirements as framed rather than definition of the permissible limits of regulation in the premises.
Upon the pivotal point we are of the view that the subject legislation sought to be enforced lacks in these circumstances the essential relationship[9] to the public interests which may be protected by exercise of police power and that, therefore, as to the activities of the appellees, the trial court was correct in holding the act unconstitutional. The decision in sum is that the definition of applicability contained in Sec. 480.01(1) (a) is stated in terms not susceptible of lawful limitation and is therefore void and unenforceable. To whatever extent Sec. 480.01(1) (b) purports to make the chapter applicable to activity such as *443 that here involved then its operable effect must also be limited, leaving otherwise effective a statute which with those provisions would be invalid.
Affirmed.
ROBERTS, C.J., and TERRELL, J., concur.
HOBSON, J. (Ret.), concurs specially.
THOMAS, THORNAL and O'CONNELL, JJ., dissent.
HOBSON, Justice (concurring specially).
Although I concur in the opinion prepared by Mr. Justice DREW, as well as the judgment rendered, I am impelled to make one or two observations.
The comments, statements or remarks made relevant to the question before us in the instant suit by the author of the opinion in Stein v. Darby, Fla., 134 So.2d 232, which in his dissent herein are treated as though they were pronouncements of law which should be adhered to under the rule of "stare decisis" were not necessary to a decision in Stein. They are therefore properly classified as "obiter dicta." All of the authorities with which I am familiar recognize the fact that gratuitous comments  "obiter dicta," if you please  cannot form a predicate for the invocation of the doctrine of "stare decisis."
DREW, J., concurs.
THOMAS, Justice (dissenting).
Unenthusiastic as I am about releasing dissenting opinions, I am compelled to do so now because of the injurious consequences I honestly feel will flow from the adoption of the majority opinion.
In its inception this case was not one of extremely complicated features. A complaint had been filed seeking a declaratory decree construing, in general, Chapter 480, Florida Statutes 1957, F.S.A., and, in particular, Sections 480.01, 480.02, 480.03 and 480.09, and the determination of "the validity thereof as relating to the rights and status" of the plaintiffs. Furthermore, plaintiffs, now appellees, asked for an injunction restraining the members of the Florida Board of Massage, appellants here, from enforcing the penal provisions of the law.
When the matter was heard by the Chancellor he concluded that although compulsory compliance with the Chapter would deprive the plaintiffs of their constitutional rights of due process and equal protection of the law and of their property without due process of law he did not specifically hold any of the act unconstitutional per se or construe any provision of the State and Federal Constitutions. He then granted the injunction.
As Justice O'Connell said in his very lucid opinion, filed 4 April 1962, the question first arose whether or not the Chancellor, in effect, held the act or parts of it invalid or "merely held them to be invalid as applied to the plaintiffs under the facts of this case." (Italics supplied.) The appellant-board was insisting, he observed, that by the decree provisions of the State and Federal Constitutions were construed, while the appellees thought the decree had no such broad scope but that the act was held unconstitutional as applied to them without striking the act or any of its parts.
Parenthetically, it should here be said that separate clauses of Section 4(2) of Article V of the Florida Constitution relate to the jurisdiction of this Court when the decree or judgment under review (1) passes upon the validity of a statute, or (2) construes a controlling provision of the Constitutions.
The author after noting this situation continued: "If the decree merely held the statute unconstitutional as applied to the *444 appellees-plaintiffs under the facts of this case rather than invalid per se, then we do not have jurisdiction of this appeal. See Stein v. Darby, Fla. 1961, 134 So.2d 232."
This is the significant statement which, accurate as it is, now seems to tempt some members of the Court to circumvent its effect by the simple but dubious process of receding from the opinion in the cited case, ex mero motu, even though counsel for the parties have offered no criticism of the decision and have not even mentioned it. More about this later.
Upshot of the opinion was that inasmuch as it was not too clear whether or not the Chancellor had held the act or portions of it unconstitutional and, therefore, whether this Court had or had not jurisdiction, the Court should temporarily relinquish to the Chancellor jurisdiction so that he might amplify his decree to the extent of showing whether or not he directly passed on the validity of the chapter or any of its sections. The Chancellor was requested to comply, and the clerk of his court to forward a copy of the new order to this Court.
In the supplemental order the Chancellor announced the view that "as applied to the state of facts disclosed in this record, Chapter 480, F.S.A. and, in particular, Sections 480.01, 480.02, 480.03, 480.06, and 480.09, F.S.A. is and are unconstitutional as applied to the occupation of the Plaintiffs and all other operators of Stauffer System tables or of other similar devices * * *." (Italics supplied.)
Upon the receipt of the Chancellor's supplemental decree an order was prepared reciting the amendment and containing the observation that he had "merely" held the statute invalid "as applied to the plaintiffs" so, continued the proposed order, this Court was without jurisdiction and the matter should be transferred to the District Court of Appeal. Cited to support the position was Stein v. Darby, Fla., 134 So.2d 232.
The opinion in Stein v. Darby, supra, which was filed 11 October 1961 and became absolute when a rehearing was denied 29 November of that year was prepared by this writer. Since that time the Court recognized and followed the opinion in Dresner v. City of Tallahassee, Fla., 134 So.2d 228.
A sincere effort was made in Stein v. Darby, supra, to differentiate between the cases involving constitutionality of acts which would come direct to the Supreme Court from whatever trial court decided them and those remaining cases which would go to the District Courts of Appeal.
Before proceeding to further discussion of the Stein case it is fitting to refer to the opinion of this Court in Ansin v. Thurston, Fla., 101 So.2d 808, containing the pronouncement that the District Courts of Appeal "are courts primarily of final appellate jurisdiction;" that "the revision and modernization of the Florida judicial system [by the amendment of Article V of the Constitution in 1956] * * * was prompted by the great volume of cases reaching the Supreme Court and the consequent delay in the administration of justice." It was further written in the opinion that "under the constitutional plan the powers of this Court to review decisions of the district courts of appeal are limited" and strictly proscribed, citing Diamond Berk Insurance Agency, Inc. v. Goldstein, Fla., 100 So.2d 420. The corollary is that the jurisdiction of the Supreme Court is also proscribed so that both may operate in independent spheres.
Bearing in mind the pronouncements that the power of the Supreme Court was, and was intended to be, circumscribed, and that the amendment was "prompted" by the mass of work accumulating in the Supreme Court with the consequent delay in administering justice, let us take a look at the result which would flow from disturbing the ruling announced in Stein v. Darby, supra.
In that case it was said, in language which this writer hoped and tried to make clear, that a ruling on the constitutionality of laws would be appealable to the Supreme *445 Court if the result was to remove the statute from the statute books or leave it there and that a ruling declaring an act invalid as applied to the facts in a given case would properly be heard by the appropriate District Court of Appeal. In this manner areas of operation of the Supreme Court and of the District Courts of Appeal were distinctly defined. In addition, the Supreme Court could entertain those cases in which the District Courts of Appeal "initially" determined the validity or invalidity of an attack, for example, when those courts made such decisions in cases of original jurisdiction or in those rare instances when an appellate court on its own account passes originally upon the constitutionality of an act.
By receding from the decision in Stein v. Darby, supra, it seems to this writer that the final determination of cases involving the constitutionality of legislative acts will get completely out of hand and a pattern for their consideration and decision will be indistinct, confusing and unstable. And surely there should not be instability in principles announced and followed, much less in decisions involving the very power to act.
Rhetorical questions immediately present themselves. Will not a ruling receding from Stein v. Darby, supra, result in all final judgments or decrees, involving the constitutionality of acts of legislature, on whatever ground, coming direct to this Court from the trial courts entering them? Will not the cautious lawyer bring all such cases here intending that if for some reason not yet clear this Court prefers not to entertain them they will be transferred under Florida Appellate Rule 2.1(a) (5) (d), 31 F.S.A.? And if some are to be retained and some transferred, will it be done willynilly? Of course retention of all such matters in this Court would strip the District Courts of the jurisdiction to pass upon any judgments or decrees of subordinate courts involving the constitutionality of laws. They would be restricted to decisions of constitutional questions originating with them. So there would likely be created the congestion that was said in Ansin v. Thurston, supra, to have "prompted" revision of the appellate system.
Another phase of the proposed action that alarms this writer is the apparent disregard of the doctrine of stare decisis. Surely this Court is aware of the mischief of wobbling in decisions and, to repeat, vacillation in decisions dealing with jurisdiction can be well nigh disastrous.
The Stein-Darby decision is one of this Court just 14 months old. It has been followed in the Dresner-Tallahassee decision and in many instances cases, judged by the Stein-Darby rule, have been withheld from the calendar by rulings not appearing in the reports. Yet in 14 short months the jurisdictional question relating to constitutional attacks would be thrown into doubt and confusion.
In the opinion of the majority appears language that is obscure. It is said that confusion in the "jurisdictional area arises from" an attempt to distinguish the legal effect of a decision holding a statute unconstitutional as applied to specific facts from that of a decision that the law itself is constitutional or unconstitutional irrespective of its application to pertinent facts. Whether or not the opinion in the Stein case is clear, or is confusing, must be left to an impartial reader because this writer wrote it. But we are dealing with the primary problem of jurisdiction. The matter of legal effect on the litigants would be the same in either event. The point is where the power to review resides, that is, in this Court or in the District Courts of Appeal.
In an effort to justify the position that the Court should recede from the pronouncement in Stein v. Darby, supra, the majority opinion contains the statement that "the conclusion is dictated by a consideration of historical limitations on judicial power to nullify legislative acts for constitutional transgression, under which a decision upon statutory validity cannot normally *446 be rendered in the abstract or upon any consideration other than its application in a certain case. The traditional statement is that courts can pass on the constitutionality of a statute `only as it applies and is sought to be enforced in the determination of a particular case before the court, for the power to revoke or repeal a statute is not judicial in its character.'"
The author of the opinion strives to buttress the recession by referring to Section 111 of American Jurisprudence at page 748, treating of Constitutional Law whence the quotation was lifted. The title of the section is "Interest Essential in Raising Constitutional Questions." Obviously the language quoted does not support the suggested position that courts can pass on constitutionality of statutes only as they apply to given facts. The pronouncement presents only the principle every lawyer knows, i.e., that one may not attack a statute unless he is affected by it. This would be true whether he challenged it because of its application or because of its innate invalidity. Such is demonstrated by the first two sentences of the section:
"§ 111. Generally. One of the elementary doctrines of constitutional law, firmly established by the authorities, is that the constitutionality of a legislative act is open to attack only by a person whose rights are affected thereby. Before a law can be assailed by any person on the ground that it is unconstitutional, he must show that he has an interest in the question in that the enforcement of the law would be an infringement on his rights."
It is pure sophistry to construe the subject of the section to mean that constitutionality may be challenged only as it applies to specific facts but not if it is invalid in toto. The interest of the challenger would justify his attack whether he charged invalidity as applied to the facts involved or for the reason that the law was invalid per se. The interest of the challenger is the criterion.
While we go about changing minds in matters of prime importance let us hope and pray that we may not get to the point reached by the Supreme Court of the United States which provoked a distinguished jurist, Owen J. Roberts, to write:
"The reason for my concern is that the instant decision, overruling that announced about nine years ago, tends to bring adjudications of this tribunal into the same class as a restricted railroad ticket, good for this day and train only. I have no assurance, in view of current decisions, that the opinion announced today may not shortly be repudiated and overruled by justices who deem they have new light on the subject." Smith v. Allwright, 321 U.S. 649, 669, 64 S.Ct. 757, 768, 88 L.Ed. 987, 1000.
For the reasons given I vigorously disagree with the opinion of the majority.
THORNAL, J., concurs.
NOTES
[1] Amendments since enacted do not affect the issues presented in this suit.
[2] Cf. Florida Board of Massage v. Underwood, Fla. 1950, 45 So.2d 184, 17 A.L.R.2d 1181, construing Chapter 480, prior to the addition of the language now in issue.
[3] In State v. Bruno, Fla. 1958, 104 So.2d 588, there was a motion to quash an information on five grounds, only one of which asserted the unconstitutionality of a pertinent statute. The trial court sustained the motion to quash but gave no reasons for doing so. Under these circumstances, it could not be determined whether the trial court had directly passed upon the validity of the questioned statute. This Court commented upon the firmly imbedded principle that a court should not pass upon the validity of a statute if the case could be determined on any other grounds and then stated: "This leads to the conclusion that we cannot and must not assume that the trial court, in this case, directly passed upon the validity of [the questioned statute.]" Under such circumstances this Court then ordered the case returned to the trial court "for the sole and only purpose of having the trial court enter an order setting forth therein the grounds upon which it granted the motion to quash the information."
[4] The distinction is drawn as a basis for concluding in that case that the district court had jurisdiction of an appeal from an order dismissing a complaint under F.S. Sec. 704.01(2), F.S.A., when the decree expressed the trial court's opinion that the application of the statute in the circumstances "would constitute the exercise of a power in contravention" of state and federal constitutional provisions. Since the trial court's decree was equivocal in its disposition of this issue, it was at least arguable that it merely construed the terms of the law to be inapplicable to the facts of that case because of the chancellor's conviction that a broader construction of its terms would render the law unconstitutional. The point of applicability as well as validity was decided to the contrary by the district court, but upon certiorari here the only issue properly presented for adjudication was the district court's jurisdiction to decide the appeal, rather than the status of its decision as an initial determination of the constitutional issue in the litigation.
[5] 11 Am.Jur. 753, Const.Law, Sec. 111, citing Bandini Petroleum Co. v. Superior Court, 284 U.S. 8, 52 S.Ct. 103, 76 L.Ed. 136, 78 A.L.R. 826; White v. Johnson, 282 U.S. 367, 51 S.Ct. 115, 75 L.Ed. 388; People ex rel. Rusch v. White, 334 Ill. 465, 166 N.E. 100, 64 A.L.R. 1006; Boyd v. Johnson, 212 Iowa 1201, 238 N.W. 61; State ex rel. Linde v. Packard, 35 N.D. 298, 160 N.W. 150, L.R.A. 1917B, 710; Insurance Co. of North America v. Welch, 49 Okla. 620, 154 P. 48, Ann.Cas. 1918E, 471; In re Knowles' Estate, 295 Pa. 571, 145 A. 797, 63 A.L.R. 1086; State v. Heffernan, 40 R.I. 121, 100 A. 55, citing R.C.L.; St. Louis Southwestern R. Co. v. State, 113 Tex. 570, 261 S.W. 996, 33 A.L.R. 367. Accord State ex rel. Crim v. Juvenal (1935), 118 Fla. 487, 159 So. 663.
[6] Florida cases collected 6 Fla.Jur. 330, Const.Law Sec. 72.
[7] Cooley, Const.Limitations, 2nd ed., Vol. 1, 366, 383.
[8] In Harrell's Candy Kitchen, Inc. v. Sarasota-Manatee Airport Authority, Fla. 1959, 111 So.2d 439, this Court said: "this fact [that the trial court did not expressly rule on the validity of the act] does not alter the effect of the decree as a negative disposition of all pertinent questions properly raised." To the same effect see Evans v. Carroll, Fla. 1958, 104 So.2d 375.
[9] Cf. Eelbeck Milling Co. v. Mayo, Fla. 1956, 86 So.2d 438; Florida Accountants Association v. Dandelake, Fla. 1957, 98 So.2d 323, 70 A.L.R.2d 425.