282 So.2d 617 (1973)
NORTHSIDE MOTORS OF FLORIDA, INC., a Corporation, Appellant,
v.
Paul BRINKLEY, Appellee.
No. 43401.
Supreme Court of Florida.
July 31, 1973.
*618 J. Kennedy Hutcheson and Mitchell W. Legler, Jacksonville, for appellant.
Sidney E. Lewis, of Goldman, Presser, Lewis & Nussbaum, Jacksonville, for appellee.
John W. Ball, Herman Ulmer, Jr., Haywood M. Ball and C. Wayne Alford, Jacksonville, of Ulmer, Murchison, Ashby & Ball, Jacksonville, for Ford Motor Credit Co., General Motors Acceptance Corp. and Chrysler Credit Corp.
William H. Adams, III, Jacksonville, for Florida Commission for Uniformity of Legislation.
Steven Goldstein and Alan Alop, Jacksonville, for Duval County Legal Aid Assn., as amici curiae.
ROBERTS, Justice.
This cause is before us on direct appeal from an order of the Circuit Court of the Fourth Judicial Circuit which directly passed upon the validity of Florida Statutes, Section 679.503, F.S.A., thereby vesting jurisdiction in this Court pursuant to Article V, Section 3(b)(1) of the Constitution of Florida, 1973, F.S.A.
In April, 1972, appellee, plaintiff-below, purchased a 1968 Buick from appellant, defendant-below. The total cash price was $2,583.80. A down payment of $700.00 was paid by appellee in the form of $300.00 in cash and $400.00 allowance on a 1965 Buick which was traded. The unpaid balance and the amount financed was $1,887.40, and the deferred payment price of $2,305.20 was payable to appellant in 24 equal monthly installments of $96.05 commencing June 1, 1972. The contract between the parties contained the following provisions:
"13. Buyer agrees that the title to and a security interest in the Motor Vehicle and any additions, accessions, and substitutions thereto shall remain in Seller until all payments due hereunder have been paid in full.
* * * * * *
"18. In the event of default ... Seller, without notice, shall have the right to (a) declare all sums remaining unpaid under this Agreement, including any late charges, to be due and payable, subject to any rebate to which Buyer may be entitled, and the right to sue Buyer for such amount if Seller is not paid promptly; (b) demand that Buyer immediately surrender possession of the Motor Vehicle, in which event, Buyer hereby agrees to return promptly the Motor Vehicle to Seller; (c) lawfully enter the premises of any Buyer where the Motor Vehicle may be found without prior notice, demand for performance or legal process and take possession of the Motor Vehicle without being liable in any way to such Buyer on account of entering said premises; (d) assert any and all rights and remedies on default of a secured party under the Uniform Commercial Code as enacted in Florida (whether the Code has been enacted in the jurisdiction where the rights and remedies are asserted), including without limitation, the right to sell or otherwise dispose of the goods ..."
Furthermore, as required by Florida Statute 520.07, F.S.A., the following language appeared in the contract in bold print:
"NOTICE TO BUYER
"(1) DO NOT SIGN THIS CONTRACT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES.
"(2) YOU ARE ENTITLED TO AN EXACT COPY OF THE CONTRACT YOU SIGN.
"(3) THE BUYER DOES HEREBY ACKNOWLEDGE RECEIPT OF AN EXACT AND COMPLETE COPY OF THE FOREGOING CONTRACT."
Appellee took possession of the automobile and certificate of title was issued reflecting a lien of $2,305.20 in favor of St. *619 Johns River Bank. Only two payments were made by appellee, June and July. Thereafter, as a result of default by appellee, the St. Johns River Bank, owner of contract between the parties by previous assignment, reassigned said contract and all rights to appellant. Subsequently, on or about October 9, 1972, at a time when the payments due under the contract were in default, appellant, acting through its employees, took possession of the motor vehicle in the evening from the home of appellee without his knowledge or consent.
As a result of this action, appellee brought suit for unlawful conversion and damages. Appellee moved for summary judgment as to liability and appellant moved for summary judgment alleging that there was no genuine issue as to any material fact. Relying upon the decision of the Supreme Court in Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), in an order on motions for summary judgment, the trial court held that the provisions of the retain title contract entitling the seller to exercise any remedies afforded it by the right to "lawfully enter the premises of any buyer where the motor vehicle may be found without prior notice, demand the performance or legal process and take possession of the motor vehicle without being liable in any way to such buyer on account of entering said premises," violated procedural due process of the Fourteenth Amendment to the Constitution of the United States. The trial court, therefore, denied appellant's motion for summary judgment, granted appellee's motion for partial summary judgment as to liability, and adjudged that this cause shall be tried solely on the question of damages. Appellant filed a motion for rehearing of the summary judgment in which it alleged that the trial court in its order entered January 4, 1973, failed to take into consideration Florida Statutes, Section 679.503, F.S.A., which gives a party the right to repossess without judicial process. In an order denying motion for rehearing, the trial court held that the provisions of Florida Statutes, Section 679.503, F.S.A., as applied to the facts and circumstances of this case are unconstitutional.
This statute provides,
"679.503 Secured party's right to take possession after default.  Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action. If the security agreement so provides the secured party may require the debtor to assemble the collateral and make it available to the secured party at a place to be designated by the secured party which is reasonably convenient to both parties. Without removal a secured party may render equipment unusable, and may dispose of collateral on the debtor's premises under § 679.504."
Although the trial court held the above statute unconstitutional as applied to the facts and circumstances of the particular facts before it, this Court in Snedeker, et al. v. Vernmar, Ltd., et al., 151 So.2d 439 (Fla. 1963), makes it clear that a decision of a trial court holding a statute unconstitutional as applied to the facts of a case is sufficient to vest jurisdiction in this Court. In Snedeker, et al. v. Vernmar, supra, at 441-442, this Court stated,
"[T]he real confusion in this jurisdictional area has arisen from the attempt to distinguish the legal effect of a decision holding a statute unconstitutional as applied to specific facts from that of a decision `that the law itself was constitutional or unconstitutional irrespective of its application to pertinent facts.' Stein v. Darby, Fla. 1961, 134 So.2d 232, 236. To whatever extent the opinion in the cited case excludes decisions in the first category (i.e. those finding a statute invalid as applied to specific facts) from the appellate jurisdiction of this Court under Article V, Section 4, supra, we must recede from such construction of *620 the provision for appeal here from any `decision directly passing upon' the pertinent issues of statutory validity or constitutionality... . The adjudication, however, of validity or invalidity in every such case is a decision passing upon the validity of the statute as applied to the facts at bar, unless, of course, the court ultimately concludes that the terms of the law can be construed as inapplicable to such facts, in which event the constitutional issue is not decided."
In determining whether Florida Statutes, Section 679.503, F.S.A., violated the due process clause of the Fourteenth Amendment, the summary question for our consideration as phrased by appellant and appellee is whether there is a sufficient element of state action to invoke the applicability of the Fourteenth Amendment of the Constitution of the United States, which provides in part, "... nor shall any state deprive any person of life, liberty, or property without due process of law... ." The Fourteenth Amendment is directed solely to state action and individual invasion of individual rights is not the subject matter thereof. Civil Rights Cases, 109 U.S. 3, 11, 3 S.Ct. 18, 27 L.Ed. 835 (1883). The Supreme Court of the United States has since emphasized and re-emphasized that state action will not be found in the purely private conduct of an individual voluntarily engaged in without some form of active assistance or cooperation on the part of the state. Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161, Barrows v. Jackson, 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586. In Shelley v. Kraemer, supra, the court held,
"Since the decision of this court in the Civil Rights Cases, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883), the principle has become firmly embedded in our constitutional law that the action inhibited by the first section of the Fourteenth Amendment is only such action as may fairly be said to be that of the States. That Amendment erects no shield against merely private conduct, however, discriminatory or wrongful." 334 U.S. at 13, 68 S.Ct. at 842.
The trial court in granting partial summary judgment and in finding Florida Statutes, Section 679.503, F.S.A., to be a violation of due process, relied upon Fuentes v. Shevin, supra, wherein the Supreme Court of the United States which held Florida's and Pennsylvania's prejudgment replevin statutes invalid under the Fourteenth Amendment since they work a deprivation of property without due process of law by denying the right to a prior opportunity to be heard before chattels are taken from the possessor. The relevant provisions of Florida law[1] relating to the replevin procedure contested in Fuentes involved direct state action. The Supreme Court explained the issue before them to be "... whether procedural due process in the context of these cases requires an opportunity for a hearing before the state authorizes its agents to seize property in the possession of a person upon application of another." (emphasis supplied) Emphasizing the active participation of the state agents, and stating that its holding in Fuentes was a very narrow one, the Supreme Court declared:
"The constitutional right to be heard is a basic aspect of the duty of government to follow a fair process of decisionmaking when it acts to deprive a person of his possessions. The purpose of this requirement is not only to ensure abstract fair play to the individual. Its purpose, more particularly, is to protect his use and possession of property from arbitrary encroachment  to minimize substantively unfair or mistaken deprivations of property, a danger that is especially great when the State seizes goods simply upon the application of and for the benefit of a private party. So viewed, the prohibition against the deprivation *621 of property without due process of law reflects the high value, embedded in our constitutional and political history, that we place on a person's right to enjoy what is his, free of governmental interference."
We further note with interest that the Supreme Court discussed the dissimilarity between these prejudgment replevin statutes and the common law from which they descended. The court tracked the historical background of the Florida and Pennsylvania replevin statutes and emphasized that at common law where prejudgment seizure was carried out by the use of state power, notice and opportunity for at least a summary hearing was required. However, the court in Fuentes did note that in a situation where state action was not involved, "the creditor could, of course, proceed without use of state power, through self-help by `distraining' the property before a judgment." 407 U.S. at 569, n. 12, 92 S.Ct. at 1993.
In delineating between private and state action, the Supreme Court stated in Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1951).
"Only by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance."
Although reaffirming this principle, the Supreme Court recently noted that in the racial discrimination area mere state regulation is not sufficient state action to trigger application of the Fourteenth Amendment. Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1973). Therein, the court asserted that the state must significantly involve itself in the activities by the private parties in order for those activities to take on constitutional dimensions and stated,
"We therefore hold that, with the exception hereafter noted [regarding a statute which, in effect required the club to discriminate], the operation of the regulatory scheme enforced by the Pennsylvania Liquor Control Board does not sufficiently implicate the State in the discriminatory guest policies of Moose Lodge so as to make the latter `State action' within the ambit of the Equal Protection Clause of the Fourteenth Amendment."
In the decision of Greene v. The First National Exchange Bank of Virginia, 348 F. Supp. 672 (W.D.Va. 1972) which involved the identical question presently before us  the constitutionality vel non of the Uniform Commercial Code's self-help provision in § 9-503  the court determined that such provision did not involve state action and was not violative of the Fourteenth Amendment and stated,
"The cases appear clear in this area that under the Fourteenth Amendment due process is denied only when an arm of the state acts directly against an individual's property and deprives him of it without notice or a hearing. Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1972), state suspension of plaintiff's driver's license without a hearing; Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971), denial to indigents of access to courts; Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971), state statute authorizing police chief to prevent sales or gifts of liquor to plaintiff without a hearing; Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), state's right to terminate public assistance to people receiving it without a hearing struck down; Armstrong v. Manzo, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965), state adoption proceeding which did not notify true father unconstitutional; Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), state court decision on trust funds without proper notice to affected beneficiaries held unconstitutional. In all these cases some state official, agency, or branch took some direct action concerning *622 an individual's rights or property without adequate notice or hearing."
We hold that self-help repossession by a creditor does not constitute state action. Florida Statutes, Section 679.503, F.S.A., is no more than a codification or restatement of a common law right and a contract right recognized long before the promulgation thereof and creates no new rights. 2 Pollock & Maitland, The History of English Common Law (2nd ed. 1968), 574, 2 Blackstone, Commentaries on the Laws of England, 856-858, Messenger v. Sandy Motors, Inc., 121 N.J. Super. 1, 295 A.2d 402 (1972), Kipp v. Cozens, 11 U.C.C. Reporting Service 1067. Conditional sales or retain title contracts with self-help repossession provisions as the one entered into by the parties presently before us existed in this state long before statutes were enacted to regulate them. McGriff v. Porter, 5 Fla. 373 (1853), Bank of Jasper v. Tuten, et al., 62 Fla. 423, 57 So. 238 (1911), Percifield v. State, 93 Fla. 247, 111 So. 519 (1927), and C.I.T. Corporation v. Reeves, 112 Fla. 424, 150 So. 638 (1933). In Percifield, supra, 111 So. at 520, this Court held,
"... that a purchaser having failed to discharge the indebtedness as evidenced by written notes or written contract, including a stipulation that the title to the property, the payment for which such note or contract is given, shall remain in the vendor until such note or contract is paid, never acquires title to or becomes the absolute owner of the property in question until such obligation has been discharged, and when default has occurred in the payment of such obligation the vendor has the legal right to take possession of the property, sell the same and apply the proceeds to the payment of the obligation, and, if the note or contract contains the provision that the vendor under such conditions may repossess the property without process of law, then the vendor may repossess such property without resorting to legal process, if he can do so without committing a breach of the peace or committing an unlawful trespass."
Since contract, pre-commercial code law clearly gave the seller the right to repossess upon default of the buyer, Florida Statutes, Section 679.503, F.S.A., merely recognizes the parties right to contract in such a manner if they so desire and is really insignificant to the transaction when we consider whether it constitutes state action.
Several courts in this nation have recently been confronted with the constitutionality vel non of Section 9-503 of the Uniform Commercial Code. Holding that the questioned provision does not constitute a violation of due process, the United States District Court for the Northern District of California in Oller v. Bank of America, 342 F. Supp. 21, 23 (1972), reasoned:
"What we have here is a private act taken by a private organization to protect its security interest in personal property that is subject to a conditional sales contract. The courts have been almost uniform in refusing to color such transactions as `State actions'. See McCormick v. First Nat'l Bank of Miami, 322 F. Supp. 604 (S.D.Fla. 1971). It is difficult to imagine any statutory provision that does not, in some way, control human relationships. To say, as plaintiff seems to contend, that all human behavior which conforms to statutory requirements is `State action' or is `under color of State law' would far exceed not only what the framers of the Civil Rights Act ever intended but common sense as well."
In McCormick v. First National Bank of Miami, 322 F. Supp. 604 (S.D.Fla. 1971), although decided before Fuentes v. Shevin, supra, the court held that repossession was a remedy the bank had under a contract and that by exercising this remedy the bank was acting independently under the contract and was not acting under color of state law. The Superior Court of New Jersey determined in Messenger v. Sandy *623 Motors, Inc., supra, that codification of self-help repossession by enactment of U.C.C. Section 9-503 cannot give that practice the color of state action so as to take it out of the private area and to make it subject to the Fourteenth Amendment. Therein, the court quoted with approval the following statement by Professor Mentshikoff on behalf of the permanent editorial board for the Uniform Commercial Code:
"Section 9-503 simply recognizes this common knowledge of buyers on time that repossession follows default and makes unnecessary its statement in the contract. It cannot be that codifying a generally understood practice of ancient and honorable lineage and surrounding it with safeguards renders the practice unconstitutional."
The validity of this provision of the commercial code has been upheld in Pease, etc. v. Havelock National Bank, et al., 351 F. Supp. 118 (D.Neb. 1972), Kipp v. Cozens, supra, Kirksey v. Theilig and Chase v. Chrysler Credit Corp., 351 F. Supp. 727 (D.Colo. 1972), Colvin v. Avco Financial Services of Ogden, Inc., (D.Utah 1973), Shirley v. State National Bank of Connecticut (D.Conn.), Civil No. 15,319, April 2, 1973.
The Supreme Court in Fuentes v. Shevin, supra, regarding interpretation of Fourteenth Amendment due process expressly stated that their holding was a very narrow one. Sub judice, the trial court in relying upon Fuentes v. Shevin, supra, to invalidate the contract between the parties and to overturn the constitutionality of Florida Statutes, Section 679.503, F.S.A., on the grounds that it violated the Fourteenth Amendment due process overextended the rationale of Fuentes beyond its narrow holding. Justice Weisberger, of the Superior Court of Rhode Island, very recently expressed the following view in Plante et al. v. Industrial National Bank of Rhode Island, Civil Action File No. 73-714, April 4, 1973:
"I am not convinced by any means that the Court will proceed to extend its position in Fuentes v. Shevin to the Uniform Commercial Code provisions which are under consideration here. Fuentes and Shevin [sic] had to do with replevin actions. The justice who wrote the decision cited, interestingly enough, certain common law precedents relating to hearings by a sheriff, which in his opinion created an eminence on the part of the common law from which he might prescind to constitutional requirement at the present time. However, they were dealing with the question of replevin. They were dealing with the question of the issuance of a court order to secure materials, to take possession of those materials from the owner thereof, pendente lite.
"I am of the opinion that the decision in Fuentes v. Shevin ought not to be extended by courts of nisi prius. The scholarship of the opinion, while impressive, indicates a notion that until it was determined had not been held by legal thinkers anywhere in the United States, that had not been advanced by text writers, by courts of last resort of the various states. It had not been adopted by various molders and formers of legal opinion, and consequently I feel that while Fuentes v. Shevin must be obeyed by state courts, that the entire credit structure of the United States depends upon stability. It depends upon giving effect to agreements which have been entered into between parties. I recognize the doctrine of the adhesion agreement, the discrepancy between the bargaining positions of borrower and lender. However, one does not improve the credit structure of the United States by tearing the same down in order perhaps to correct imperfections that may from time to time be susceptible of improvement.
"As a consequence, I am not inclined to extend the doctrine of Fuentes v. Shevin one millimeter beyond the requirements of the case as enunciated by the Supreme *624 Court of the United States or those elements which are necessarily to be implied therefrom. To extend it to the point of declaring unconstitutional these provisions of the Uniform Commercial Code which are in effect a restatement of declaration of the common law, I think is not constitutionally required at the present time... ." (emphasis supplied)
Fuentes v. Shevin, supra, should not have been extended to apply to the factual situation presently before this Court. We hold that Florida Statute § 679.503, F.S.A., is not an unconstitutional deprivation of property without due process of law in violation of the Fourteenth Amendment.
It is important to note that Florida Statutes, Section 679.503, F.S.A., provides for self-help only if it can be attained peacefully without a breach of the peace and thus an aggrieved debtor has access to the courts if self-help is used improperly. Section 679.503 must be considered in conjunction with Florida Statutes, Sections 679.504 through 679.507, F.S.A., which contain provisions designed to ensure that a seller cannot exercise his contract rights in a manner which enables him to profit from the buyer's default. As the court pointed out in Greene v. First National Bank, supra, plaintiff was not required to turn his car over to defendant's agents. He could have retained possession and forced defendant to use judicial methods of repossession.
We emphasize that the creditor may not use self-help techniques which would result in a breach of the peace. Such methods would expose the creditor to tort liability and would also expose him to liability under Florida Statute 679.507, F.S.A. White and Summers in their Handbook of the Law under the Uniform Commercial Code (West 1972), pp. 966-969, discuss the essential requirement that repossession be peaceful and what constitutes a breach of the peace:
"To determine if a breach of the peace has occurred, courts inquire mainly into: (1) whether there was entry by the creditor upon the debtor's premises; and (2) whether the debtor or one acting on his behalf consented to the entry and repossession.
"In general, the creditor may not enter the debtor's home or garage without permission, but he can probably take a car from the debtor's driveway without incurring liability. The debtor's consent, freely given, legitimates any entry; conversely, the debtor's physical objection bars repossession even from a public street. This crude two-factor formula of creditor entry and debtor response must, of course, be refined by at least a consideration of third party response, the type of premises entered and possible creditor deceit in procuring consent.
"Perhaps the most articulate and forceful statement of the general rule that entry into the debtor's residence in his absence is a breach of the peace is found in Girard v. Anderson [219 Iowa 142, 257 N.W. 400 (1934)]. There the creditor repossessed a piano from the debtor's home in the latter's absence. The debtor maintained that the house had been locked; the creditor testified that his agents entered through an unlocked door. Despite the presence of a clause in the sale contract purporting to authorize forcible entries, the court found that the entry, even according to the creditor's testimony, was a breach of the peace.
* * * * * *
"Thus, the great majority of courts find unauthorized entries into the debtor's residence to be breaches of the peace, and many find entry into his place of business or garage to be such a breach. As one moves away from the residential threshold to the yard, the driveway, and finally the public street, however, the debtor's argument becomes progressively more tenuous. We have found no case which holds that the repossession of an automobile from a driveway or a public street (absent other circumstances, such *625 as the debtor's objection) constitutes a breach of the peace, and many cases uphold such a repossession."
In Percifield v. State, supra, this Court held that the creditor could repossess property sold under a conditional sales contract without resorting to legal process only if he could do so without committing an unlawful trespass or other breach of the peace. The creditor may not exert wrongful pressure upon the debtor to obtain repossession of the secured items. He has no right to use force and enjoys no immunity. He acts at his peril, and exposes himself to severe potential liability, including liability for punitive damages. Buie v. Barnett First National Bank of Jacksonville, 266 So.2d 657 (Fla. 1972).
Sub judice, appellee, made no allegation that appellant breached the peace in effecting the repossession of the automobile nor does appellee allege that appellant failed to comply with all provisions of the Uniform Commercial Code (Florida Statutes 679.503-679.507, F.S.A., relative to self-help repossession).
For the foregoing reasons, the judgment of the trial court is reversed and this cause is remanded for further proceedings consistent with this opinion.
It is so ordered.
CARLTON, C.J., and ADKINS, BOYD, McCAIN and DEKLE, JJ., concur.
ERVIN, J., dissents in part and concurs in part with opinion.
ERVIN, Justice (dissenting in part and concurring in part):
In deciding whether the Circuit Court below properly held F.S. Section 679.503, F.S.A. unconstitutional under the Fourteenth Amendment to the United States Constitution, it is necessary to determine 1) whether there is sufficient state action involved in the summary seizure of appellee's property to trigger application of the due process clause and 2) whether such summary seizure does violence to the due process clause of the Fourteenth Amendment.
What constitutes "state action" is a problem that has faced appellate courts since the ratification of the Fourteenth Amendment in 1868. The majority have chosen to take a restricted interpretation of that term; an interpretation that was prevalent prior to the many civil rights decisions arising within the last twenty-five years. Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), clearly involved state action since state agents were authorized to seize the property of Florida citizens under the replevin statute.
There is also decisional authority for a finding of state action where a legislative enactment condones or encourages one individual's unlawful interference with the property rights of another. Reitman v. Mulkey, 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967), involved a clause in California's constitution which prohibited limitations on a citizen's right to dispose of his property. The United States Supreme Court found, despite the fact that all parties to the controversy were private individuals and were not acting pursuant to court order or with the aid of state agents, that the constitutional provision "encouraged" discrimination in the housing market thereby providing the requisite state action necessary for application of the Fourteenth Amendment.
An analogous situation is presented by Florida's adoption of Section 9-503 of the Uniform Commercial Code. The enactment of that provision into law means that Florida has chosen to explicitly sanction and support extrajudicial summary repossessions. Attorneys preparing standard form sales contracts to be used by creditors in Florida are consequently induced to incorporate the same or similar contractual language to that which is found in the present case:
"18. In the event of default ... Seller, without notice, shall have the *626 right to ... (d) assert any and all rights and remedies on default of a secured party under the Uniform Commercial Code as enacted in Florida... ."
This encouragement of creditors to avail themselves of summary repossession procedures is the same kind of "state action" found in Reitsman v. Mulkey, supra, and is sufficient to invoke the applicability of the due process clause of the Fourteenth Amendment. Cf. Adams v. Egley, 338 F. Supp. 614 (S.D.Cal. 1972).
The majority of this Court argue that the holding in Fuentes should be narrowly applied and suggest that the Supreme Court's decision is limited to holding our replevin statute unconstitutional. I can not agree with that interpretation of the language contained in Fuentes and with other previous Supreme Court decisions relating to due process. See, e.g., Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), and Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). Such restrictive construction of procedural due process necessitated the United States Supreme Court review in Fuentes. The District Courts had
"reasoned that Sniadach and Goldberg, as a matter of constitutional principle, established no more than that a prior hearing is required with respect to the deprivation of such basically `necessary' items as wages and welfare benefits.
"This reading of Sniadach and Goldberg reflects the premise that those cases marked a radical departure from established principles of procedural due process. They did not. Both decisions were in the mainstream of past cases, having little or nothing to do with the absolute `necessities' of life but establishing that due process requires an opportunity for a hearing before a deprivation of property takes effect." (Emphasis supplied.) Fuentes v. Shevin, supra, 407 U.S. at 88, 92 S.Ct. at 1998.
Instead of focusing on inappreciable distinctions between Fuentes and the decision we are reviewing, we should direct attention to the common ground upon which these decisions rest. In each instance the parties entered into a broadly drafted adhesion contract, with the terms specified by the seller. In each case the debtors unwittingly signed away their constitutional rights by way of waiver provisions of the contracts. Here, as in Fuentes,
"there was no bargaining over contractual terms between the parties who, in any event, were far from equal in bargaining power. The purported waiver provision was a printed part of a form sales contract and a necessary condition of the sale. The appellees made no showing whatever that the appellants were actually aware or made aware of the significance of the fine print now relied upon as a waiver of constitutional rights." Fuentes v. Shevin, Id. at 95, 92 S.Ct. at 2002.
The judiciary should take a realistic look at the nature of Mr. Brinkley's position (and others similarly situated) when he walked onto appellant's car lot to buy a Buick. Supposing that he was capable of reading and interpreting to some extent all of the fine print contained in the sales contract placed before him, a suggestion on his part that the salesman delete and initial provisions having to do with summary repossession (or, alternatively, that provisions be added allowing for notice and hearing) would have been met with bewilderment, then laughter, and finally a suggestion that he shop elsewhere. He would have been faced with the dilemma Professor Kessler describes, as quoted in Adams v. Egley, supra, 338 F. Supp. at 620:
"`The weaker party, in need of goods or services, is frequently not in a position to shop around for better terms, either because the author of the standard contract has monopoly (natural or artificial) or because all competitors use the same clauses. His contractual intention is but a subjection more or less voluntarily *627 to terms dictated by the stronger party; terms whose consequences are often understood only in a vague way, if at all.' (Kessler, Contracts of Adhesion  some Thoughts About Freedom of Contract (1943) 43 Colum.L.Rev. 629, 632.)"
The huge disparity in bargaining power between a creditor armed with skilled draftsman and a purchaser faced with a "take it or leave it" sales pitch reminds one of the "Buyer beware!" adage that originated in the middle ages and apparently still has vestigial application today. Self-help repossession is but another antiquated common law tool used by creditors to avoid court processes. Our Legislature, by enacting Section 9-503 of the Uniform Commercial Code, has not improved on the modern buyer's plight. The majority states that "Florida Statutes, Section 679.503 is no more than a codification or restatement of a common law right and a contract right recognized long before the promulgation thereof and creates no new rights." (Emphasis supplied.) That being the case, creditors would not miss the absence of that subsection in our statute were we to declare it unconstitutional and debtors could, perhaps, hope that the Legislature would pass alternative repossession measures more in keeping with due process and the expanding consumer protection consciousness that has taken place in recent years. Anderson, in his treatise on the Uniform Commercial Code, states:
"If the trend of protecting consumers and indigent persons continues, it is believed that it [UCC Section 9-503] will be held unconstitutional, unlawful, contrary to public policy, or unconscionable for a creditor to repossess the collateral without affording the debtor some opportunity to be heard. The fact that the courts are not involved in such self-help is not any assurance of the continued validity of the right of nonjudicial repossession. If repossession without a hearing is wrong, is it any the less a wrong when the creditor acts on his own and the courts are not involved? Likewise, if repossession without a hearing is wrong, does it not become wrong for the state to tell the creditor by way of UCC § 9-503, that he can repossess without a hearing as long as he doesn't go to court? Revolutionary as is the conclusion that repossession is unlawful, it is believed that that conclusion is an inevitable and logical development from the Fuentes decision." Anderson on the Uniform Commercial Code, 2d Edition, 1972-1973 Cumulative Supplement, p. 133.
See also Fuentes v. Shevin; An End To The Misuse of Replevin, 34 U.Pitt.L.Rev. 312, 318 (1972); Kramer, Clifford, Lasley, Fuentes v. Shevin: Due Process and the Consumer, a Legal and Empirical Study, Texas Tech.L.Rev. 23, 45, 53 (1972).
Part of the majority's opinion is devoted to a discussion of whether a garaged automobile can be repossessed without "breaching the peace." It would appear that those who can afford to garage their automobiles need not fear having them summarily repossessed from their premises while those who are forced to park their cars on the street may discover them missing without any breach of the peace. Such questionable legal distinctions have resulted in "self-help" operating unequally to victimize the poor.
Our summary judgment and small claims court procedures with minimal courts costs could afford sellers and lenders means to expeditiously regain possession of personalty while affording buyers an opportunity to be heard as to any lawful defenses they might have. Compare Hart Land and Cattle Co. v. Reeves Steel, Inc. (Fla.), 273 So.2d 370.
"Self-help" as to personal property, similarly as in the case of recovery of realty, payment for which is in default, and debt should be outlawed as inimical to the guarantee of "due process." Resort to "self-help" results in the contretemps and miscarriages of justice of the kind produced in Buie v. Barnett First National Bank of *628 Jacksonville (Fla.), 266 So.2d 657. It is a relic of the past; an instrument of oppression that has no place in a modern society.
Out-of-court settlements of civil claims are, of course, favored by the law, including voluntary surrender by buyer of possession of chattels upon which defaults of purchase payments have occurred. What is deprecated herein is statutorily countenanced "self-help" which allows sellers to contractually suspend prior notice of repossession of personalty and to bargain away the opportunity of the buyer to be judicially heard as to any defenses he may have. Such extralegal, one-sided statutory grants favoring sellers and lenders are inimical to due process of law and contrary to good public policy.
Insofar as the majority opinion enunciates certain safeguards for the buyer's protection, the opinion to that extent comports with realistic standards of due process. I concur with these safeguards, but believe it would have been more consistent with due process to have held unconstitutional any "self-help" authorizations of the code which authorized suspension of the elements of notice and judicial hearing.
NOTES
[1] See Florida Statutes, Sections 78.01, 78.07, 78.08, 78.10 and 78.13, F.S.A.