GROSS. J.
The issue in this case is whether the lessor “regained” custody of a vehicle within the meaning of an insurance policy exclusion when an independent contractor repossessed the vehicle at the direction of the lessor. We hold that the repossession triggered the policy exclusion.
Fort Lauderdale Leasing, Inc.’s (“FLL”) predecessor in interest leased a Ford Explorer to Albert Matani on January 11, 1995. The lease was for a 48-month term. Consistent with section 324.021(9), Florida Statutes (1995), the lease required lessee Matani to obtain insurance with limits of $100,000 per person and $300,000 per incident for bodily injury and $50,000 for property damage. Section 324.021(9)(b) relieves the lessor from liability for the lessee’s accident in the leased automobile, so long as the lessee has insurance complying with the statutory limits “in effect.”
Paragraph 11 of the motor vehicle lease described the lessor’s rights upon *452 termination. One sentence concerns the lessor’s right to repossess the vehicle:
Upon termination, Vehicle shall be returned to Lessor at its offices designated above and, if Lessee fails to return Vehicle, Lessor may take possession of same wherever found, without notice or legal process, and without liability to Lessor.
FLL and Reliance Insurance Co. (“Reliance”) entered into a policy entitled “Contingent Coverage Designed Specifically for Long Term Automobile Leasing.” The policy provided coverage to FLL for the period of July 1, 1996 to July 1, 1997. Paragraph C of the Policy’s “LEASING CONCERNS — CONTINGENT COVERAGE” provided that coverage was “subject to” a number of provisions. One provision was that “[a]t the time of the accident the insurance required by the lease agreement is not collectible.” Another provision was that “[c]overage under this endorsement ceases the date you regain custody of the leased auto.” (Italics supplied).
The reference to “you” in the last provision is to FLL. FLL is the only named insured under the Policy. The Policy states that “[t]hroughout this policy the words ‘you’ and ‘your’ refer to the Named Insured shown in the Declarations.”
After Matani defaulted on his lease payments, FLL hired Jack Dorn, a licensed, independent contractor, to repossess the vehicle. Dorn received FLL’s express consent to repossess pursuant to an authorization letter from Suzanne Kolb, FLL’s collections manager.
Dorn repossessed the vehicle in Boca Raton at approximately 7:30 a.m. on July 20, 1996. After repossessing the vehicle, Dorn drove to his mother’s residence in Pembroke Pines for lunch. He arrived at his mother’s between noon and 1:00 p.m. At approximately 2:30 p.m., Dorn was driving the Explorer in Pembroke Pines when he collided with another vehicle driven by Willie Wiggins. Dorn died as a result of the accident.
After the accident, Wiggins and his wife sued Dorn’s estate, FLL, Matani, and State Farm Mutual (the Wigginses’ insurer).[1] FLL answered, asserted affirmative defenses, and filed crossclaims against Dorn’s estate and Matani. FLL filed a third-party complaint against Reliance for a declaratory judgment and for breach of contract based on Reliance’s failure to provide coverage or a defense to the Wig-ginses’ lawsuit. Dorn’s estate filed a crossclaim against Reliance for failure to provide coverage to Dorn as an additional insured, and for a declaration as to the amount of Reliance’s primary coverage responsibility.
After a bench trial, the court found that “Dorn was an independent contractor” and FLL “did not regain care and control of the vehicle.” The court held that Dorn’s personal use of the vehicle “did not amount to a conversion or theft” that would “abrogate” FLL of its responsibility for its “use or misuse” of the car. The court determined that Dorn was an “additional insured under the Reliance policy.” The court also found that Matani’s insurance on the vehicles was not collectible because his carrier had denied coverage to him. The court concluded that FLL was entitled to coverage and a defense under the Reliance policy.
We agree with Reliance that FLL “regained custody” of the vehicle within the meaning of the policy exclusion when Dorn repossessed it.
“Am insurance policy is a contract between the insured and the carrier.” State Farm Fire & Cas. Ins. Co. v. Deni Assocs. of Florida, Inc., 678 So.2d 397, 400 (Fla. 4th DCA 1996). Exclusionary provisions
*453 which are ambiguous or otherwise susceptible to more than one meaning must be construed in favor of the insured, since it is the insurer who usually drafts the policy. See Excelsior Insurance Co. v. Pomona Park Bar & Package Store, 369 So.2d 938, 942 (Fla.1979). However, “[o]nly when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction is the rule apposite. It does not allow courts to rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties.”
Deni Assocs. of Florida, Inc. v. State Farm, Fire & Cas. Ins. Co., 711 So.2d 1135, 1138 (Fla.1998) (quoting State Farm Mut. Auto. Ins. Co. v. Pridgen, 498 So.2d 1245, 1248 (Fla.1986)). To properly interpret an exclusion in a policy, “the exclusion must be read in conjunction with the other provisions of the policy, from the perspective of an ordinary person.” Union Am. Ins. Co. v. Maynard, 752 So.2d 1266, 1268 (Fla. 4th DCA 2000) (citations omitted).
In construing this policy, a court should not lose sight of the subject matter of the insurance contract. As Reliance points out in its reply brief, “[t]he policy at issue was not a business auto policy protecting FLL from liability for accidents involving its own company cars; it was a policy protecting FLL from dangerous instrumentality liability for uninsured cars in the possession of lessees.” The contingent coverage was designed to protect the lessor in case the lessee lost his coverage while the vehicle remained in the lessee’s custody. The lessee’s obligation to insure the vehicle would terminate with its surrender to the lessor upon termination of the lease. The concept of “custody” in the policy should be measured by the lessor/lessee relationship which is the focal point of the coverage.
The lease contemplates that, upon default, the lessor may “take possession” of the vehicle “wherever found, without notice or legal process.” Similarly, under the insurance policy, the lessor’s “regaining]” of custody cuts off the lessee’s custody. Absent the lessee’s voluntary return of the vehicle after default, repossession is the extrajudicial act which transfers custody or possession to the lessor. Neither the lease, nor the policy, contemplate a limbolike state where neither the lessor, nor the lessee, has custody of the leased automobile.
This interpretation of the policy is consistent with the treatment of repossession by Florida law, which almost eliminates the legal distance between a recovery agent and the owner or lessor who retains the agent for a repossession. Part IV of Chapter 493, Florida Statutes (1999), requires the licensing of a “recovery agent,” which means “any individual who, for consideration, advertises as providing or performs repossessions.” § 493.6101(21), Fla. Stat. (1999). Section 493.6101(22) provides that “[a] repossession is complete when a licensed recovery agent is in control, custody, and possession” of the repossessed motor vehicle.
The trial court’s finding that Dorn was an independent contractor does not relieve FLL, without more, from liability under the dangerous instrumentality doctrine for the agent’s negligence in driving the automobile. See generally Aurbach v. Gallina, 753 So.2d 60 (Fla.2000) (tracing history of liability under the dangerous instrumentality doctrine); Susco Car Rental Sys. v. Leonard, 112 So.2d 832, 837 (Fla.1959); Penske Truck Leasing Co. v. Moore, 702 So.2d 1295, 1299 (Fla. 4th DCA 1997). Based on the findings of the trial court that Dorn had not converted or stolen the vehicle, his custody of the vehicle was tantamount to FLL’s for the purpose of imposing the dangerous instrumentality doctrine.
Additionally, under Florida common law, an owner has the right to repossess property “without resorting to legal process, if he can do so without committing a breach of the peace or committing an *454 unlawful trespass.” Percifield v. State, 93 Fla. 247, 250, 111 So. 519, 520 (1927). In Northside Motors of Florida, Inc. v. Brinkley, 282 So.2d 617, 624-25 (Fla.1973), the supreme court analogized a creditor’s rights under the uniform commercial code, section 679.503, Florida Statutes (1973), with the common law rights of repossession. The court cautioned that
In Percifield v. State, supra, this Court held that the creditor could repossess property sold under a conditional sales contract without resorting to legal process only if he could do so without committing an unlawful trespass or other breach of the peace. The creditor may not exert wrongful pressure upon the debtor to obtain repossession of the secured items. He has no right to use force and enjoys no immunity. He acts at his peril, and exposes himself to severe potential liability, including liability for punitive damages.
Northside Motors, 282 So.2d at 625 (citation omitted). Relying on Northside Motors, we have held that a creditor’s duty to repossess a car without a breach of the peace was a nondelegable duty, such that a creditor cannot avoid liability by hiring an independent contractor to accomplish the repossession. See Sammons v. Broward Bank, 599 So.2d 1018 (Fla. 4th DCA 1992).
For these reasons, we reverse the final judgment on the third party complaint in favor of FLL and remand the case for entry of judgment in favor of Reliance.
FARMER and TAYLOR, JJ., concur.

. The third amended complaint provided that "at the time and place" of the accident, the vehicle driven by Dorn "was owned by FORT LAUDERDALE LEASING” because Dorn "had repossessed said automobile within the scope of his employment and agency with [FLL].”