**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 5, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ALLSTATE INSURANCE COMPANY,

Plaintiff-Appellee,

v.

FORD MOTOR CREDIT COMPANY,

Defendant-Appellant.

No. 06-2107
(D.C. No. CIV-04-1285 MCA/WPL)
(New Mexico)

**ORDER AND JUDGMENT**[*]

Before **TACHA,** Chief Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **LUCERO,** Circuit Judge.

Ford Motor Credit Company, hereinafter referred to as "Ford" or the "lessor," leased two pickup trucks to Marquez Surveying Company, Inc., a New Mexico corporation with offices in Albuquerque, New Mexico, hereinafter referred to as "Marquez" or the "lessee." One of the lease conditions was that Marquez insure the two trucks and that the policy name Ford as an additional insured. Pursuant thereto, Marquez bought a Business Auto Policy from Allstate Insurance Company, hereinafter referred to as "Allstate." That policy provided coverage for all vehicles used by Marquez in its

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

business operations with a $1 million liability limit. Under an endorsement to that policy, Ford was identified as a "Lessor–Additional Insured and Loss Payee." In that connection, the "additional insurance" endorsement in favor of Ford provided that such coverage would expire on the "expiration date shown on the Schedule, or when the lessor or his or her agent takes possession of the 'leased auto,' whichever occurs first."[1] And therein lies our present problem.

Marquez later defaulted on its lease payments to Ford. Prior to the default, Ford had entered into an "Independent Contractor Agreement" with Great Western Recovery, Inc., an independent repossession contractor, to repossess any vehicles that Ford might refer to it for repossession. That agreement referred to Great Western as an "independent contractor" and provided that Great Western would obtain insurance that protected against liability arising out of its repossession of vehicles and that Ford was to be named as an additional insured under that policy.

---

[1] Specifically, the Additional Insured Endorsement read as follows:

A. Coverage

    1. Any "leased auto" designated or described in the Schedule or in the Declarations will be considered a covered "auto" you own and not a covered "auto" you hire or borrow. For a covered "auto" that is a "leased auto" **Who is Insured** is changed to include as an "insured" the lessor named in the Schedule.

    2. The coverages provided under this endorsement apply to any "leased auto" described in the Schedule until the expiration date shown in the Schedule, or <u>when the lessor or his or her agent takes possession of the "leased auto," whichever occurs first.</u> (Emphasis added).

2

In the instant case, Ford asked Great Western to repossess the two trucks previously leased by Ford to Marquez. Great Western then turned over the actual repossession to one Dennis Seibert, a self-employed businessman in the car-crushing and auto auction business. Seibert, in turn, sent one of his contractors, Carl Coffman, to the business premises of Marquez to pick up the two trucks which Ford had leased Marquez. It would appear that Coffman was somewhat concerned and frightened about the matter because several months prior thereto, when he had attempted to repossess the trucks, John Marquez, an employee of Marquez, had threatened to shoot him if he returned. Nevertheless, Coffman went to Marquez' business location, in Albuquerque, New Mexico, entered onto the premises, saw one of the leased vehicles here involved, entered the truck, and started the vehicle with the keys which had been left in the ignition. As Coffman was in the process of exiting the Marquez property, John Marquez suddenly appeared in front of the truck then being driven by Coffman. In this setting, Coffman, driving the truck leased to Marquez by Ford, struck John Marquez, who later died as a result of the injuries he sustained in the collision. Coffman continued driving and left the scene, continuing to drive the truck, without stopping, to Seibert's place of business.

The family of John Marquez later brought suit in a state court in New Mexico against Ford and others, alleging, *inter alia*, that Ford was liable for the conduct of Coffman. At about the time that the New Mexico state court ruled that under New Mexico law, even though Ford had assigned repossession to an independent contractor engaged by Ford to repossess the truck, Ford had a "non-delegable duty to repossess its

3

collateral without breaching the peace," and thus was responsible for the conduct of Coffman, Ford demanded that Allstate, under the insurance policy which it had issued Marquez, defend Ford in the wrongful death case brought against it in the New Mexico courts, and indemnify it, if an adverse judgment was obtained. After Allstate refused Ford's demand, stating that its investigation indicated that it did not have a duty to defend or indemnify, Allstate then initiated the present action in the United States District Court for the District of New Mexico against Ford. At about the same time that Allstate instituted the present action, Ford settled the wrongful death action brought against it in state court.

Jurisdiction in the United States District Court for the District of New Mexico was based on diversity of citizenship, 28 U.S.C. § 1332. In Count I of its complaint, Allstate sought a declaratory judgment that coverage under the endorsement of Ford as an additional insured, as contained in its policy issued to Marquez, terminated prior to the accident, and in Count II Allstate asked for the return of money it had previously paid, in error, to Ford for the loss of the truck. Later, Allstate and Ford settled the claim made in Count II of the complaint, and that claim was finally resolved and is not involved in the present proceeding.

In the present proceeding in the United States District Court, Ford, in due time, filed an answer to Allstate's declaratory judgment action and also filed a counterclaim in which it asked for a declaratory judgment that Allstate did have a duty to defend Ford in the action brought by Marquez against it in the state court, and to indemnify Ford for all

4

or a portion of the amount paid by Ford in settlement of the action brought against it by the Marquez family in New Mexico state court, and that in refusing to do so, Allstate acted in bad faith. Allstate in due time filed an answer to Ford's counterclaim. Later, Allstate filed a motion for summary judgment, asking the United States District Court in the present proceeding to enter an order declaring that Allstate did not have a duty to defend Ford in the state court proceeding, nor was it required to indemnify Allstate. Ford thereafter filed a response to Allstate's motion for summary judgment and also filed its own motion for partial summary judgment on its counterclaim wherein it sought a declaratory judgment that Allstate had a duty to defend and indemnify Ford, and in refusing to do so acted in bad faith. After hearing, the district court granted Allstate's motion for summary judgment and shortly thereafter granted Allstate's motion for summary judgment in its favor on Ford's counterclaim, and denied Fords' motion for partial summary judgment. Accordingly, judgment was entered in favor of Allstate. Ford appeals.

The central issue in this case is whether, under New Mexico law, the insurance coverage afforded Ford under the insurance policy issued Marquez had expired at the time that Coffman, driving the truck which Ford had previously leased Marquez, struck John Marquez. As stated, both Ford and Allstate moved for summary judgment, thereby indicating that neither, as of that time, at least, believed there were any genuine issues of material fact, and that the issue to be resolved was a question of law. As above stated, the coverage afforded Ford by Allstate by that policy applied to any vehicle leased by Ford to

5

Marquez "until the expiration date shown in the schedule or when the lessor or his or her agent takes possession of the 'leased auto,' whichever occurs first." The coverage date had not expired, so the narrow question is whether, at the time of the accident, Ford, as the lessor, or its agent, had possession of the "leased auto."

As stated, the district court in the instant case granted Allstate's motion for summary judgment and denied Ford's motion for summary judgment in a 25-page Opinion and Order. In so doing, the district court initially held that under New Mexico state law, on the basis of admitted facts, Coffman's actions were tantamount to Ford's actions for the purposes of the exclusion provision. In so doing, the court relied on the statutory law of New Mexico, noting that under N.M. Stat. § 55-9-609, after Marquez defaulted on its payments due Ford, that Ford, being a secured party, could proceed "without judicial process" to take possession of the collateral "if it proceeds without a breach of the peace." N.M.Stat. § 55-9-609(b)(2). The court pointed out that the Official Comment to § 55-9-609(b) states that courts, in considering whether a secured party has engaged in a breach of the peace, should hold the secured party responsible for the acts of others taken on the secured party's behalf, including independent contractors engaged by the secured party to repossess the property. The district court went on to state that the secured creditor may not absolve itself of liability stemming from a repossession conducted by any person acting on behalf of the secured creditor. The district court then made reference to the fact that the New Mexico state judge in the action brought by the John Marquez family against Ford, and others, held that even though Ford may have

6

assigned the repossession to an "independent contractor," it still had a "non-delegable duty" to repossess the truck without breaching the peace. In connection with the latter, in the instant case, there is no doubt that there was a "breach of the peace," which was fully investigated by the police.

Further, in support of its holding that "in law," Coffman's actions in repossessing the truck were Ford's actions, the district court cited with approval *Reliance Ins. Co. v. Wiggins*, 763 So.2d 450, 453-54 (Fla. Dist. Ct. App. 2000), an opinion of the Florida Fourth District Court of Appeals. In *Reliance*, the Florida court spoke as follows:

> The issue in this case is whether the lessor "regained" custody of a vehicle within the meaning of an insurance policy exclusion when an independent contractor repossessed the vehicle at the direction of the lessor. We hold that the repossession triggered the policy exclusion.

On this particular matter, Ford's position is that *Reliance* was incorrectly decided and in any event was "non-binding precedent on this court." In this latter connection, in *Rawson v. Sears Roebuck & Co.*, 822 F.2d 908 (10th Cir. 1987), we held that in determining the local law of a given state, we may look to "all resources, including decisions of other states."

In the present case, the district court went on to rule, alternatively, that in any event, "even if Coffman were not acting as [Ford] itself, Coffman was acting as an agent for [Ford] as that term is used in the insurance contract," relying on general rules of agency, and citing various authorities in support thereof.

7

Finally, the district court concluded as a matter of law that Coffman was in "possession" of the leased vehicle at the time of the accident, citing "dictionary definitions." The district court quoted the Random House Unabridged Dictionary, defining "possession" as "actual holding or occupancy, either with or without rights of ownership," and Black's Law Dictionary, which stated that "possession" means "having control over a thing with the intent to have and to exercise such control," and "where the thing is in the immediate occupancy and physical control of the party."

It was on this general basis that the district court in the instant case granted Allstate's motion for summary judgment, holding that the actions of Coffman had triggered the expiration clause in the insurance policy issued Marquez by Allstate, and that accordingly, Allstate had no duty to defend or indemnify Ford.

Our review of the district court's judgment is *de novo*, in which we give no deference to the judgment of the district court. *Salve Regina College v. Russell*, 499 U.S. 225 (1991) (Justices Rehnquist, White, and Stevens, dissenting).[2]  Accordingly, we accord no deference to the district court's understanding of local New Mexico law, even though in the instant case, the district judge, prior to her service on the federal district

---

[2] Prior to *Salve Regina*, we had held that "when there is no authoritative decision of a state court on an issue under purely local law, great deference must be paid to the views of a federal judge who is familiar with the local law and practice." *Rhody v. State Farm Mut. Ins. Co.*, 771 F.2d 1416, 1419 (10th Cir. 1985).  Since *Salve Regina*, we have held that "a federal district court's state law determinations are entitled to no deference and are reviewed *de novo*." *Roberts v. Printup*, 422 F.3d 1211, 1215 (10th Cir. 2005).

8

court, was a judge on the New Mexico State Court of Appeals for some five years, and we will review the case *de novo*.

As indicated, the district court's initial holding was that under New Mexico law, "Coffman's actions were tantamount to [Ford's] actions" for the purposes of the exclusion provision in the insurance policy issued Marquez by Allstate. Our *de novo* review of the record on appeal leads us to the same conclusion. The district court then went on to hold that if Coffman, under New Mexico law was not the "alter ego," so to speak, of Ford, it was, under New Mexico law, the "agent" of Ford. Again, our *de novo* review of the record before us leads us to the same conclusion. Finally, the district court concluded that under New Mexico state law, Coffman had "possession" of the truck at the time the vehicle collided with John Marquez. Again, our *de novo* review of the record leads us to the same conclusion. If Coffman was not in "possession" of the vehicle when it struck Marquez, it is hard to conceive of who else was. Coffman had turned on the ignition, had his hands on the steering wheel, and the vehicle was moving forward at the time of the impact with John Marquez.

As for Ford's claim that Allstate, in refusing to defend and indemnify Ford, acted in "bad faith," the district court held that since Allstate, under New Mexico law, did not have a contractual duty to defend or indemnify Ford, such negated any claim by Ford for bad faith on the part of Allstate. Again, our *de novo* review of the present record leads us to the same conclusion.

9

Judgment affirmed.

Entered for the Court


Robert H. McWilliams
Senior Circuit Judge